**Rashann Maurice BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–99–045–CR.**

Court of Appeals of Texas,
Waco.

Dec. 13, 2000.

Paul E. Fulbright, Law Office of Paul E. Fulbright, Corsicana, for appellant.

Patrick C. Batchelor, Navarro County Crim. Dist. Atty., Lyndon Laird, Navarro County Asst. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

The court convicted Rashann Maurice Brown in a bench trial of taking a controlled substance (marihuana) into a correctional facility and sentenced him to two years' imprisonment. Brown claims in two issues that: (1) the court erred in overruling his motion to suppress because the State lacked probable cause to arrest him; and (2) the evidence is insufficient to support his conviction because it does not establish that he intentionally and knowingly took marihuana into the county jail.

## BACKGROUND

DPS Trooper Jean Bangassar stopped a U–Haul truck on Interstate Highway 45 in the early afternoon for speeding. The driver identified himself with an Arkansas identification card. He informed Trooper Bangassar that a friend of one of the passengers had rented the truck but he could not find the rental agreement. He told her that they had come from Leesville, Louisiana and were going to Wilmer, Texas. Bangassar asked the occupants to exit the truck.

Brown sat in the right front seat of the U–Haul. He identified himself to the trooper as Shawn Johnson and gave a date of birth, but he could not recall his social security number. Bangassar suspected Brown was lying because a records check revealed no one with that name and birth date and because Brown could not recall his social security number even though he told her about a job he had working for a magazine company in Florida.

Bangassar noticed the rental agreement in the front console as the occupants exited. After obtaining a consent to search the U–Haul, Bangassar discovered two additional passengers were in the cargo compartment. The agreement reflected that Haden Drexler Brandies had rented the U–Haul in Pensacola, Florida as an "IN–TOWN RENTAL" and that the truck was three days' overdue. Brandies was not

one of the truck's occupants. A check on the vehicle revealed that it had been reported stolen by the owner. The occupants told Bangassar that Brandies had left them without explanation when they were staying at a hotel in Leesville.

Bangassar arrested all five occupants for unauthorized use of a motor vehicle. She and other officers transported them to the Navarro County Justice Center. At the Justice Center, the officers took the suspects to a break room in the sheriff's department.[1] The officers advised the suspects of their *Miranda* rights and questioned them further about the U–Haul and its owner.

Brown stated that Brandies was his roommate in Florida and that he was with Brandies when he rented the truck. Bangassar determined from the interrogation of the suspects that Brown and another identified in the hearing only as "Shep" had been with Brandies in Florida and had traveled together with him from Florida. Accordingly, she turned Brown and "Shep" over to jail authorities to be booked in on the unauthorized use charge and had the other three occupants released from custody.

As the suspects sat in the break room, Deputy Bruce Venable asked them "if they had anything in their possession that they weren't suppose to have in their possession; namely, drugs, weapons, or anything like that." He cautioned them that "it's a completely different charge once you step behind the secured doors of the jail." None of the suspects turned over any contraband.

The officers took Brown inside the secured area of the jail to the booking area. After Brown was booked into the jail, he pulled a small quantity of marihuana from one of his pants pockets and handed it to Venable as he was undressing to take a shower.

---

1. Deputy Bruce Venable testified that the Navarro County Justice Center includes the courts, the offices of the Sheriff's Department,

## SUPPRESSION RULING

Brown contends in his first issue that the court abused its discretion in overruling his motion to suppress because Trooper Bangassar did not have probable cause to arrest him. The State responds that probable cause existed for Brown's arrest under the totality of the circumstances.

■■■ An officer must have probable cause to make a warrantless arrest. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991); *Josey v. State,* 981 S.W.2d 831, 841 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). "Probable cause exists 'when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not,' a particular suspect has committed an offense." *Hughes v. State,* 878 S.W.2d 142, 154 (Tex.Crim.App. 1992) (op. on reh'g) (quoting *Castillo v. State,* 818 S.W.2d 803, 805 n. 4 (Tex.Crim. App.1991)); *Blackmon v. State,* 926 S.W.2d 399, 404 (Tex.App.—Waco 1996, pet. ref'd).

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.

*Stull v. State,* 772 S.W.2d 449, 452 n. 1 (Tex.Crim.App.1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983)).

and the county jail. The break room in question is located in the offices of the Sheriff's Department, not in the jail.

■ At the time Trooper Bangassar decided to arrest Brown, she knew that: (1) he was a passenger in a stolen truck; (2) he was from the state in which the truck was stolen; (3) the purported lessor of the truck was not among its occupants; (4) the rental agreement which evidenced that the truck was three days' overdue was in the front console area near where Brown was sitting; (5) the other occupants could not identify Brown other than to say that they knew him only by the name he had given the officer; and (6) Brown did not know his own social security number despite claiming to be gainfully employed. Because the name and birth date Brown gave her did not produce any results when checked, Bangassar also had reason to believe Brown had lied to her about his identification.

From this evidence, we conclude that Trooper Bangassar had sufficient probable cause to believe that Brown was a participant in the commission of the unauthorized use of the stolen U–Haul truck. Accordingly, we overrule his first issue.

## VOLUNTARINESS

Brown argues in his second issue that the evidence is "insufficient" to establish that he intentionally or knowingly took the marihuana into the jail. He claims that he could not have taken the marihuana into the jail with the requisite culpability because he was handcuffed when he was escorted into the jail. Thus, he contends that he "had no control over the [marihuana]" and "had no opportunity to dispose of [it] prior to being taken inside the jail facility."

The State relies on Deputy Venable's testimony to establish that Brown did have an opportunity to turn over the marihuana during the interview process and before he was escorted into the secured area of the jail. The State also places weight on Brown's written stipulation that he was intentionally and knowingly possessing marihuana when he was "placed into custody." According to the State, this constitutes sufficient evidence to support the conviction.

■ Since the advent of the factual sufficiency analysis of *Clewis* in 1996, we have articulated several different approaches for construing a "sufficiency" complaint to determine whether it challenges the legal or factual sufficiency of the evidence (or both). In *Hoffman v. State*, we concluded that the appellant's sufficiency point constituted a factual sufficiency challenge because he requested reversal and remand in his discussion of the relief required in the event of a favorable ruling on that point.[2] 922 S.W.2d 663, 671 & n. 6 (Tex.App.—Waco 1996, pet. ref'd). In *Caldwell v. State*, we observed that we would construe a general sufficiency challenge as a challenge to the legal sufficiency of the evidence. 943 S.W.2d 551, 552 (Tex. App.—Waco 1997, no pet.). More recently, we have noted that we look to the arguments made and the cases cited to construe a general sufficiency issue. *See Purvis v. State*, 4 S.W.3d 118, 120 (Tex. App.—Waco 1999, no pet.).

■ As we have previously stated, counsel should clearly specify the type of sufficiency challenge being made and state the applicable standard of review. *See Purvis*, 4 S.W.3d at 119–20; *Deckard v.*

2. When the appellant challenges the legal sufficiency of the evidence, he should request reversal and rendition of a judgment of acquittal. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996); *Jones v. State*, 945 S.W.2d 852, 854 (Tex.App.—Waco 1997), *aff'd*, 979 S.W.2d 652 (Tex.Crim.App.1998). When a factual sufficiency challenge is made however, the appellant should request reversal and remand. *See Clewis*, 922 S.W.2d at

133–34; *Gowans v. State*, 995 S.W.2d 787, 790 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd). If both challenges are made, the appellant should request reversal and rendition or in the alternative reversal and remand. *See Clewis*, 922 S.W.2d at 133; *Regan v. State*, 7 S.W.3d 813, 819 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (appellate court may proceed to review factual sufficiency *after* it determines the evidence is legally sufficient).

*State*, 953 S.W.2d 541, 543 n. 3 (Tex.App.—Waco 1997, pet. ref'd). If counsel fails to do so, we may require re-briefing under Rule of Appellate Procedure 38.9. *See* Tex.R.App.P. 38.9. However, if we are satisfied that the briefing rules have not been flagrantly violated, we will construe the issue presented. Preferably, the argument and authorities presented in the brief will dictate whether an issue challenges the legal or factual sufficiency of the evidence or both. *See Purvis*, 4 S.W.3d at 120; *Hoffman*, 922 S.W.2d at 671 n. 6. Otherwise, we will construe a general sufficiency challenge as a challenge to only the legal sufficiency of the evidence. *See Caldwell*, 943 S.W.2d at 552.

In this case, Brown does not specify whether he is challenging the legal or factual sufficiency of the evidence on this issue. Nevertheless, he cites *Gonzales v. State* as supporting authority. 638 S.W.2d 41 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd). *Gonzales* is a legal sufficiency case. *See id.* at 43. Accordingly, we construe Brown's second issue as a challenge to the legal sufficiency of the evidence. *See Purvis*, 4 S.W.3d at 120.

■ In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

Although this issue expressly challenges intent or knowledge, Brown's complaint that he was brought to the jail against his will really challenges the sufficiency of the evidence to prove that his conduct was voluntary. *See Chimney v. State*, 6

S.W.3d 681, 688 (Tex.App.—Waco 1999, pet. filed); Tex.R.App.P. 38.1(e) (appellate court considers "every subsidiary question that is fairly included" in an issue or point). As Brown states in the summary of argument section of his brief, he believes the trial court should have found "that he did not voluntarily introduce the contraband into the correctional facility."

■ To establish criminal responsibility, the State must prove that the accused acted voluntarily *and* with a requisite culpable mental state. *See Alford v. State*, 866 S.W.2d 619, 622–23 (Tex.Crim. App.1993); *Rhodes v. State*, 997 S.W.2d 692, 694 (Tex.App.—Texarkana 1999, pet. ref'd); *Saldivar v. State*, 980 S.W.2d 475, 498 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd); *see also* Tex.Pen.Code Ann. §§ 6.01, 6.02 (Vernon 1994). The issue of voluntariness centers on "whether [the defendant] voluntarily engaged in the conduct of which he is accused." *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App. 1997) (quoting *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (op. on reh'g)).

■ To obtain a conviction, the State had to prove that Brown voluntarily took marihuana into the jail.[3] *See Alford*, 866 S.W.2d at 622–23; *Rhodes*, 997 S.W.2d at 694; *Saldivar*, 980 S.W.2d at 498. To the contrary, however, the record establishes that Brown was transported into the jail against his will because he was under arrest. Brown did not voluntarily go to the county jail. Therefore, he did not voluntarily take marihuana into the jail.

■ The stipulation relied on by the State establishes that Brown was intentionally and knowingly in possession of less than two ounces of marihuana when he was taken into custody on the side of the road. This stipulation sets out the offense with which Brown should have been

---

**3.** Section 38.11(b) of the Penal Code provides in pertinent part, "A person commits an offense if the person takes an alcoholic beverage, controlled substance, or dangerous drug into a correctional facility...." Tex.Pen.Code Ann. § 38.11(b) (Vernon 1994).

charged, *i.e.*, possession of marihuana in an amount less than two ounces. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon Supp.2000). However, the stipulation is silent as to the voluntariness of Brown's actions once he was arrested.

 The State also contends that Brown had the opportunity to "volunteer" (*i.e.*, confess) that he had contraband. Because this "opportunity" was in a custodial setting, we conclude that the "opportunity" the officers gave Brown was nothing more than an invitation to admit his guilt to a lesser crime in order to avoid arrest and prosecution for a more serious offense. This type of "opportunity" is tantamount to an attempt to compel the defendant to waive his Fifth Amendment privilege against self-incrimination "by threatening to impose ... other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Lykins v. State*, 784 S.W.2d 32, 37 (Tex.Crim.App.1989) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 434, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984)); *accord In re Verbois*, 10 S.W.3d 825, 829 (Tex.App.—Waco 2000, orig. proceeding [mand. denied]) (citing *Garrity v. New Jersey*, 385 U.S. 493, 496–98, 87 S.Ct. 616, 618–19, 17 L.Ed.2d 562 (1967)). Thus, it is improper. *Lykins*, 784 S.W.2d at 37.

Because Brown did not voluntarily go into the jail, the evidence is legally insufficient to establish that he voluntarily took marihuana into the jail. For this reason, we sustain Brown's second issue.

## APPROPRIATE DISPOSITION

Brown's prayer for relief requests that we "reverse and remand this case to the

trial court with appropriate instructions consistent with the decision of this court." However, Rule of Appellate Procedure 43.3 provides:

> When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when:
>
> (a) a remand is necessary for further proceedings; or
>
> (b) the interests of justice require a remand for another trial.

TEX.R.APP.P. 43.3.

The Dallas Court of Appeals has examined the relationship between the requirement that an appellant "clearly state[ ]" the relief requested in his prayer and the requirement that the appellate court render the judgment that the trial court should have rendered. *See Kaspar v. Thorne*, 755 S.W.2d 151, 156–58 (Tex. App.—Dallas 1988, no writ) (op. on reh'g). The Court noted that the rules require an appellate court to liberally construe a party's brief.[4] *Id.* at 156. The Court continued:

> These rules suggest that the prayer's irregularity of form or substance does not limit the relief available to a party. To the extent that the error is flagrant, the court may order a party to redraft his prayer. However, the rules prevent this court from tailoring its relief because of the violation of briefing rules without first giving the errant party an opportunity to cure the defect. Thus, we conclude that this court is not limited to remand of the cause because of a party's omission of a request for rendition when the disposition of a party's points entitles him to rendition.

4. The Court also noted that the former rule regarding the form of the prayer in an appellant's brief stated in pertinent part that the "nature of the relief sought *should* be clearly stated." *Kaspar v. Thorne*, 755 S.W.2d 151, 156 (Tex.App.—Dallas 1988, no writ) (op. on reh'g) (quoting TEX.R.APP.P. 74(g), 707–708 S.W.2d (Tex.Cases) lxxv (Tex.Crim.App.1986, amended 1997)). The current rule reads somewhat differently. It provides, "The brief *must* contain a short conclusion that clearly states the nature of the relief sought." TEX R.APP.P. 38.1(i) (emphasis added). Nevertheless, the current rules continue to require an appellate court to liberally construe a party's brief. *Compare id.* 38.9 *with* TEX.R.APP.P. 74(p), 707–708 S.W.2d (Tex.Cases) lxxvi-lxxvii (Tex.Crim.App.1986, amended 1997). Accordingly, we believe the reasoning of *Kaspar* remains valid.

**190**

*Id.* at 156–57 (citation omitted). We agree with this analysis.

 Upon a finding that the evidence is legally insufficient to support a conviction, the appropriate disposition is reversal of the judgment of conviction and rendition of a judgment of acquittal. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996); *Jones v. State,* 945 S.W.2d 852, 854 (Tex.App.—Waco 1997), *aff'd,* 979 S.W.2d 652 (Tex.Crim.App.1998). However, we may in some circumstances modify the court's judgment to reflect a conviction for a lesser-included offense. *See Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App. 1999); *Watson v. State,* 923 S.W.2d 829, 832–33 (Tex.App.—Austin 1996, pet. ref'd).

In *Collier,* the Court held that an appellate court can modify the judgment to reflect conviction of a lesser-included offense if: (1) the appellate court finds the evidence insufficient to support a conviction for the offense charged but sufficient to support a conviction for the lesser offense; and "(2) either the jury was instructed on the lesser-included offense (at the request of a party or by the trial court *sua sponte*) or one of the parties asked for but was denied such an instruction." *Collier,* 999 S.W.2d at 782. Thus, *Collier* states the rule for jury trials.

In a concurring opinion, Judge Keasler observed that the second requirement:

> should apply only when the case is tried before a jury, since there are no jury instructions in a bench trial. In a bench trial, the "judgment that the trial court should have rendered" can always be a conviction for a lesser-included offense because the trial court is authorized to find the defendant guilty of any lesser offense for which the State provides the required proof.

*Id.* at 784 (Keasler, J. concurring) (citing *Shute v. State,* 877 S.W.2d 314, 315 (Tex. Crim.App.1994)); *accord Watson,* 923 S.W.2d at 832–33. We believe this is a correct statement of the law for bench trials.[5]

**CONCLUSION**

 Possession of marihuana is a lesser-included offense of the offense charged in this case. *See Duhrkopf v. State,* 671 S.W.2d 147, 152 (Tex.App.—Fort Worth 1984, pet. ref'd) (possession of marihuana is lesser-included offense of delivery of marihuana). We have determined that the evidence is legally insufficient to prove that Brown voluntarily took marihuana into the Navarro County Jail. Nevertheless, Brown's stipulation of evidence establishes all the elements of the lesser-included offense of marihuana possession prior to his entry into the jail.

 Accordingly, we modify the judgment to reflect conviction of the lesser-included offense of possession of marihuana in an amount less than two ounces. We affirm the judgment of conviction as modified. *See Dusek v. State,* 978 S.W.2d 129, 137 (Tex.App.—Austin 1998, pet. ref'd); *Lucero v. State,* 915 S.W.2d 612, 615 (Tex. App.—El Paso 1996, pet. ref'd); *Lockett v. State,* 874 S.W.2d 810, 818 (Tex.App.—Dallas 1994, pet. ref'd). We reverse that portion of the judgment assessing punishment and remand this cause to the trial court for a new punishment hearing. *See Dickson v. State,* 986 S.W.2d 799, 806 (Tex. App.—Waco 1999, pet. ref'd); *Dusek,* 978 S.W.2d at 137; *Lucero,* 915 S.W.2d at 615; *Lockett,* 874 S.W.2d at 818; Tex.Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp. 2000).

Justice GRAY dissenting.

GRAY, Justice, dissenting.

Rashann Maurice Brown was a passenger in a speeding truck. It was determined the truck was stolen. Brown was

5. In any event, the State raised the issue of the lesser-included offense in its closing argument. The State argued, "[W]e'd ask the Court to find him guilty not only of a lesser included—not of the lesser included possession of marijuana, but of taking knowingly, at the very least, the controlled substance marihuana into the correctional facility."

arrested. After he was booked into the county jail, marijuana was found in his possession. He was convicted of taking a controlled substance into a correctional institution. He challenges the validity of the arrest leading to the discovery of the marijuana and whether he took the marijuana into the correctional institution within the meaning of the statute. We should affirm the judgment of the trial court. Because the majority does not, I respectfully dissent.

## SUMMARY OF EVIDENCE

Brown was a passenger in a U–Haul truck when it was stopped just outside Corsicana, Navarro County, Texas, for speeding and failure to maintain a single marked lane. The driver claimed he could not find the rental agreement. He was asked to exit the truck. Brown, the passenger next to the right-hand door of the truck, and the passenger in the center of the seat, were also asked to exit the truck. A computerized search on the identification of the truck located a report from Escambia County Auto Theft Division in Florida which identified it as stolen.

At some point in the investigation, it was determined that more passengers were in the cargo compartment of the truck. The compartment was opened and two additional occupants were discovered. All five were hand-cuffed and transported to a meeting room in the administrative area of the Navarro County sheriff's office. After being advised of their constitutional rights, they were interrogated to determine what the circumstances were with regard to the truck and whether anyone was going to be charged with an offense. After the initial investigation by the officers was completed, the driver of the truck and Brown were arrested for unauthorized use of a motor vehicle. The other three occupants were released.

While waiting for the officers to conduct their investigation and while still in the administrative area of the sheriff's office, the jailer advised them that "... if they had anything in their possession that they weren't suppose to have in their possession; namely, drugs, weapons, or anything like that, because I hadn't searched them at that time. It's my—I normally ask them if they have anything on them, they need to tell me now before we step inside the jail.... And I did tell them that it was going to be a—it's a completely different charge once you step behind the secured doors of the jail."

The driver and Brown were then booked into the Navarro County jail. The jailer testified that they were escorted under his guard in hand-cuffs out of the side exit of the administrative area of the sheriff's office to the outside of the building and into the secured area of the jail through a "sally port" door. They were fingerprinted, photographed, searched, and the necessary computer work performed including a computerized criminal history check through "TLETS." Information from the officer's report was also entered into the computer. Book-in was complete.

The jailer testified that Brown needed a shower. The jailer obtained the necessary supplies and escorted Brown to the shower area. After undressing to take a shower, and just as he was about to deliver his cloths to the jailer, Brown pulled less than two ounces of marijuana out of one of his pants pockets and handed it to the jailer.

## CONTROLLED SUBSTANCE IN A CORRECTIONAL FACILITY?

Brown was charged with a violation of Section 38.11(b) of the Penal Code which provides as follows:

(b) A person commits an offense if the person takes an alcoholic beverage, controlled substance, or dangerous drug into a correctional facility, except for delivery to a correctional facility warehouse, pharmacy, or physician.

TEX.PEN.CODE ANN. § 38.11(b)(Vernon Supp.2000).

In his second issue, Brown contends that the evidence is insufficient to convict him

because he was compelled to go into the correctional facility against his will and therefore he could not have intentionally taken a prohibited substance into the correctional facility. He contends that to "take" means to exercise control and management over the item. Further, he argues that once he was hand-cuffed and in the custody of law enforcement personnel, that he no longer had control of the marijuana and had no opportunity to dispose of it.

### LEGAL OR FACTUAL SUFFICIENCY?

In this single issue, Brown does not specify whether he is attacking the legal or factual sufficiency of the evidence. *See Purvis v. State,* 4 S.W.3d 118, 119 (Tex. App.—Waco 1999, no pet.); *Turner v. State,* 4 S.W.3d 74, 79 (Tex.App.—Waco 1999, no pet.). Normally when confronted with this problem we can look to the cases cited for the applicable standard of review and determine if the appellant is attacking the legal or factual sufficiency of the evidence. We cannot do that here because the appellant did not discuss the standard of appellate review. *Id.*

I will review the issue for both legal and factual sufficiency.

### LEGAL SUFFICIENCY-STANDARD OF REVIEW

When reviewing a claim of legal insufficiency of the evidence, we must determine, after considering all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 967 S.W.2d 410, 412 (Tex.Crim. App.1998); *Westfall v. State,* 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. ref'd). This review is the same for both direct and circumstantial evidence cases. *Green v. State,* 840 S.W.2d 394, 401 (Tex.Crim.App. 1992); *see also Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). Whether the evidence satisfies the *Jackson* test is a

question of law. *Clewis v. State,* 922 S.W.2d 126, 132 (Tex.Crim.App.1996).

### FACTUAL SUFFICIENCY STANDARD OF REVIEW

If a party is attacking the factual sufficiency of an adverse finding on an issue for which they did not have the burden of proof, they must demonstrate that there is insufficient evidence to support the adverse finding. *Johnson v. State,* 23 S.W.3d 1, 10 (Tex.Crim.App.2000).

> The complete and correct standard a reviewing court must follow to conduct a *Clewis*[1] factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. . . .

*Id.* at 11. "Having done so, the court should set aside the verdict only if the evidence standing alone is 'so weak' as to be clearly wrong and manifestly unjust." *Id.* at 10. If the reviewing court determines a manifest injustice has occurred, and it would, therefore, be improper to defer to the fact finder's decision, then the reviewing court must provide a clearly detailed explanation of that determination that takes all of the relevant evidence into consideration. *Id.* at 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

While evidence may be in conflict, it is for the fact finder, in this case the trial court, to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Even where there is no conflict, the fact finder may give no weight to some evidence, and thereby reject part or all of a witness' testimony. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App. 1987). The fact finder is also the judge of the credibility of the witnesses and may "believe all, some, or none of the testimo-

---

1. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim. App.1996).

ny." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

ADDITIONAL EVIDENCE

In addition to the evidence summarized above, Brown and the State had signed a stipulation of evidence. It was introduced at his bench trial without objection. Brown stipulated that:

> On the 17th day of February, 1998, in Navarro County, Texas, at the time I was placed into custody by Troopers Bangasser and/or Allison, I did then and there intentionally and knowingly possess a controlled substance, to wit: a usable quantity of marihuana in an amount of less than two ounces. Said marihuana was retrieved from me by Bruce Venable at the Navarro County Jail.

Thus it is undisputed that Brown "intentionally and knowingly" possessed the marijuana at the time that he entered the secured area of the jail. The question is whether, because he was compelled to enter the jail against his will, it can be said that he took the marijuana into the jail within the meaning of the statute.

APPLICATION

Brown had been advised that it was a different offense for taking contraband into the secured area of the jail. He did not surrender the contraband to the jailer prior to entering the secure area of the jail. In fact, he managed to hide the contraband during the search incident to the book-in procedure and prevent its detection. He did not surrender the contraband until he had to surrender his clothes to be washed.

The trial court, acting as the fact finder, could have properly determined that it was not until it was obvious that discovery of the marijuana was certain that Brown decided to surrender the contraband. Brown was already well beyond the entry area of the jail. He had proceeded through the book-in area. If the jailer had not determined that he immediately needed a shower, he might very well have been able to take the contraband into the holding cell until he appeared before the magistrate to have his bail determined. Based upon the evidence presented, the fact finder could have concluded that Brown intentionally declined to surrender the marijuana prior to entry into the jail, and thus chose to take it into the jail, in the hope that he would be able to get released on bail or otherwise dispose of it before it was found in his possession. The evidence was legally and factually sufficient to support a determination that Brown did take the controlled substance, marijuana, into a correctional institution.

### CONCLUSION

I would affirm.