Rodney Dewayne DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–99–688–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Oct. 17, 2002.

Wallace Truett Sisk and Calvin Garvie, Bellville, for Appellant.

Laura Gonzalez, Daniel W. Leedy, Assistant Criminal District Attorneys, Travis J. Koehn, District Attorney, Bellville, for Appellee.

Before Justices YAÑEZ, CASTILLO and BAIRD.[1]

## OPINION

Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of engaging in organized criminal activity. Appellant waived trial by jury and entered a plea of not guilty. The trial judge' found appellant guilty of the charged offense and assessed punishment at ten years confinement in the Texas Department of Criminal Justice—Institutional Division. We affirm the judgment of conviction as reformed, and remand the case to the trial court for the determination of punishment.

## I. The Substantive Offense and Standard of Appellate Review.

Appellant's sole point of error challenges the sufficiency of the evidence to support the conviction. The elements of engaging in organized criminal activity are: (1) a person; (2) with intent to establish, maintain, or participate in a combination; (3) commits or conspires to commit; (4) an enumerated offense. TEX. PEN.CODE ANN. § 71.02(a)(1) (Vernon Supp.2002); *Mast v. State*, 8 S.W.3d 366, 369 (Tex. App.-El Paso 1999, no pet.). "Combination" means three or more persons who collaborate in carrying on criminal activities. TEX. PEN.CODE ANN. § 71.01 (Vernon

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

Supp.2002). The phrase "collaborate in carrying on criminal activities" implies continuity—something more than a single, *ad hoc* effort. *Nguyen v. State,* 1 S.W.3d 694, 697 (Tex.Crim.App.1999). Therefore, "the State must prove that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Id.*

In pertinent part, the instant indictment alleged:

> [O]n or about December 2, 1998, ... [appellant] did intentionally or knowingly appropriate, by acquiring or otherwise exercising control over property, to-wit: cattle, [owned by the complainant], without the effective consent of the owner, and with intent to deprive the owner of the property, and [appellant] did then and there commit said offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity.

■ Appellant argues the evidence is insufficient to prove the combination element. Specifically, appellant advances two arguments. First, that the evidence fails to establish that a group of three or more existed. Second, if a group did exist, the group did not collaborate in carrying on criminal activities, but rather committed a single offense. In determining whether the evidence is legally sufficient to sustain a conviction, we employ the standard established in *Jackson v. Virginia* and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is applicable to both direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Crim.App.1991), *overruled in part on other grounds, Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000).

## II. Factual Summary.

We begin by summarizing the evidence related to the theft offense alleged in the indictment. On December 1, 1998, Joe Mazoc owned a pickup truck bearing license plate no. PY1 977. On December 2, Mazoc found the vehicle was parked differently and had been damaged. Mazoc had not given anyone permission to take the vehicle, and he did not know appellant.

On December 2, 1998, the complainant went to his farm to check on a heavybred heifer. He noticed the barn door open, the gates latched differently and some feed in a pen. Unable to find the heifer and another cow, the complainant called the Port City Stockyards and was told the cows arrived around 1:30 a.m. on December 2, and had been sold. The complainant surmised that the trailer used to haul the cows had some broken boards due to tracks left on the ground. The cows were eventually returned to the complainant, and one of them walked with a limp. The complainant had not given anyone permission to take the cows, and he did not know appellant.

James Davis was the "night man" at the Port City Stockyards. In that capacity, he processed the cows as they were off-loaded. Davis took down the license plate numbers of the vehicles which hauled the cattle. In the early morning hours of December 2, the complainant's two cows were brought to the stockyard. Davis noted that the trailer used to haul the cows had broken floorboards and one of the cows had her legs protruding through. That cow walked with a limp. Davis testified the pickup hauling the cows had license plate number PY1 977. The individual

hauling the cows identified himself as Weston Starks.[2] The man asked that the proceeds from the sale be held at the stockyard. Davis identified appellant as the person who brought the complainant's cows to the stockyard. Davis had seen appellant previously at the stockyard with Ervin Starks, Jr., Davis's cousin. Davis testified that appellant and Ervin "used to bring in cows together."

Texas Ranger Doyce Cook responded to a call of some stolen cattle at the Port City Stockyards. Cook instructed that the check for the sale of the complainant's cows be made payable to Weston Starks, but that the amount be $5.82 rather than the true amount of $582.00. Cook then stayed at the stockyard and waited for someone to claim the check. Eventually, appellant claimed the check. Cook followed appellant outside, saw appellant look at the check, enter the passenger side of a vehicle, and throw the check out of the window. Cook removed appellant from the vehicle and placed him under arrest for the theft of the complainant's cows. Cook testified the vehicle was being driven by Poppii Adams and occupied by Gregory Wilson.

Gregory Wilson, appellant's cousin, denied any knowledge of stolen cattle or any conversations with appellant about stealing cattle. He further testified he did not have a conversation with Poppii Adams while appellant was inside the Port City Stockyards picking up the check.[3] Wilson also testified that he had given a contradictory statement to Austin County Deputy Sheriff Joe Villareal, but that the state-ment was false and involuntarily obtained after Wilson had been detained for three hours.

Wilson's written statement was admitted when Villareal testified. Villareal said the statement was obtained thirty-five minutes after Wilson voluntarily presented himself to the sheriff's office. Wilson's statement reads as follows:

> During the middle of November, [appellant] and I (Gregory Wilson) had this phone discussion. [Appellant] was telling me that I could make some money by stealing cattle and all we needed was a truck and we could get a trailer from where ever we get the cows and we could take the cattle to Hockley, Brenham, Columbus, Needville and Sealy. I told [appellant] that I was not trying to get involved in anything and was not. [Appellant] also told me that it was getting hot in Raccoon Bend.

Weston Starks testified that in December of 1998, he was a student at Bellville High School.[4] A teacher came to his class with a message that Poppii Adams wanted appellant's I.D. Initially, Weston testified he did not know why this request was being made, but later admitted testifying before the grand jury that such a request was, in reality, a request for Weston's I.D. Nevertheless, Weston did not have his I.D. that day so he was unable to fulfill the request. Weston testified that he did not know why his I.D. would be needed by appellant.

---

**2.** The stockyard did not request verification of the name given by the individuals who brought the cows for sale.

**3.** Specifically, he denied a conversation where Poppii Adams said: "Dusty, we are fucked. Here comes the police."

**4.** Appellant contends we should not consider the testimony of Weston Starks because it was not corroborated as required by article 38.14 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). The State concedes Weston Starks was an accomplice. As will be seen *infra*, we need not address the corroboration argument.

Poppii Adams testified that on December 1, she received a telephone call from appellant, who said he needed Weston Starks's I.D.[5] Appellant did not say why he needed the I.D., and Adams did not ask. Adams went to Bellville High School and made an unsuccessful attempt to secure the I.D. This was the first and only time appellant asked Adams to obtain an I.D. On December 2, Adams drove appellant and Gregory Wilson to the Port City Stockyards because appellant said he needed to pick up a check for Weston Starks. Appellant went in the stockyard office and returned with an envelope. When Adams noticed appellant being followed, she asked Wilson what was happening.[6] Adams said she and appellant never discussed or planned to steal cattle.

### III. Arguments and Analysis.

As noted above, appellant contends the evidence fails to establish that a group of three or more existed. And, alternatively, if a group did exist, the group did not collaborate in carrying on criminal activities, but rather committed a single offense. We will address these arguments *seriatim*.

### A. Combination of Three or More Proven?

■ A combination requires three or more persons. When the evidence set forth above is viewed in the light most favorable to the prosecution, the only individuals who could have been a part of a combination were Weston Starks, Douglas Wilson and Poppii Adams. For the evidence to be sufficient, at least two of these

individuals must be in the combination to have the minimum number of three. As noted above, all three denied participation, membership or knowledge of any combination. Weston testified he did not know why appellant wanted the I.D. While Wilson's statement recounts an offer from appellant to steal cattle, Wilson expressly rejected the offer. Moreover, Wilson testified he knew nothing of, and had no participation in, the December 2 theft of the complainant's cattle. Finally, Adams testified she had no knowledge of why appellant wanted Weston's I.D., and that she and appellant never discussed or planned to steal cattle. While the trial judge was free to disbelieve this testimony, the State was not relieved of its burden of producing evidence that a combination of three or more existed on December 2, 1998, the date alleged in the indictment. *Wright v. State*, 603 S.W.2d 838, 840 (Tex. Crim.App.1980) ("The fact that the trial judge was entitled to disregard the [testimony] does not mean that the missing elements of the offense are supplied by rejecting this testimony. The burden of proof is on the State, and it is incumbent on the State to prove every element of the offense."); *Johnson v. State*, 673 S.W.2d 190, 196 (Tex.Crim.App.1984) (disbelief of testimony cannot provide substantive proof). There simply is no evidence that any of these individuals were part of a combination.

The State counters that there is other evidence in the record that proves the existence of a group.[7] Specifically, that

**5.** Appellant contends we should not consider the testimony of Adams because it was not corroborated as required by article 38.14 of the Code of Criminal Procedure. The State concedes Adams is an accomplice. As will be seen *infra*, we need not address the corroboration argument.

**6.** Specifically, Adams denied saying: "We are fucked."

**7.** We need not consider whether this additional evidence is sufficient to prove appellant conspired to commit the offense of theft because the indictment does not contain a con-

evidence relates to two separate incidents: one in April and the other in November of 1998. We set forth .that evidence now.

Ervin Starks, Weston's brother, also testified.[8] At the time of his testimony, Ervin was in prison for engaging in organized criminal activity, burglary of a habitation and theft. Ervin testified that in April of 1998, he and appellant stole six cows and took them to the Hockley Auction Barn for sale. Appellant instructed the night man at the auction barn to handle the cows in Ervin's name. Later, Ervin and appellant returned and picked up a check in the amount of $2,783.80 for the sale of the cows. This check was admitted as State's exhibit 26. Ervin cashed the check and split the money with appellant. Ervin testified he was related to James Davis, and that he (Ervin) had taken cows to sell at the Port City Stockyards on prior occasions. The proceeds from those sales were split with appellant. Ervin testified that he was arrested in April and had been in confinement since his arrest. He testified he had no knowledge of what occurred after his arrest.

Oscar Kesee, a latent fingerprint examiner, examined State's exhibit 26 and found appellant's fingerprints on the check in the amount of $2,783.20 issued to Ervin Starks from the Hockley Auction Barn.

David Charpiot testified that he owned a pickup truck which was taken one night in November of 1998. The vehicle was returned the next day. That pickup truck bore license plate number vehicle MU 973. This license plate number matched "the number that was on the license plate of the

vehicle that took some cows to Brenham that night."

Amelia Beard, comptroller for Port City Stockyards, testified about a cattle transaction at the Brenham location. Beard identified the livestock check-in slip related to the sale of three cows transported *via* a vehicle with license plate number ML 973.[9] The name on the check-in slip was Weston Starks. Ultimately, Beard issued a check, State's exhibit 24, in the amount of $825.03 to Weston Starks for the sale of those cows. This was the check Weston cashed and split with appellant.

In addition to his testimony set forth above, Weston Starks testified that in November of 1998, appellant *instructed him* to go to the Brenham Livestock Auction and pick up a check in Weston's name in the amount of $825.00. Weston did not *own any cattle and did not know why the* check was issued to him. After cashing the check, Weston split the proceeds with appellant. This was the only check-cashing transaction Weston participated in. Weston denied ever helping appellant sell any cows, or steal any vehicle. Weston also testified that he never planned or aided appellant in the theft of cattle.

Kesee examined State's exhibit 24 and found appellant's prints on this check.

When this additional evidence is viewed in the light most favorable to the prosecution, we are unable to say it proves a combination of three or more. This testimony establishes that appellant and Ervin Starks stole cattle in April of 1998. There is no testimony that this twosome ever

---

spiracy allegation. Tex. Pen.Code Ann. § 71.01(b) (Vernon Supp.2002).

**8.** Appellant contends we should not consider the testimony of Ervin Starks because it was not corroborated as required by article 38.14 of the *Code of Criminal Procedure. See* Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon

1979). The State concedes Ervin Starks was an accomplice. As will be seen *infra,* we need not address the corroboration argument.

**9.** Our review of State's exhibit 25 leads us to conclude the exhibit actually has MuL 973 as the license plate number.

grew into a group of three or more. This association terminated upon Ervin's arrest in April. Therefore, Ervin could not have been a member of a combination on December 2, 1998, the date of the cattle theft alleged in the indictment.

Similarly, the testimony of Weston Starks, at best, proves he was a party to the November 1998 cattle theft. There is no testimony that this duo, ever grew into a combination of three or more. In fact, the evidence is to the contrary because Weston testified that he did not know why appellant needed Weston's I.D. on December 2. And there is no other evidence of Weston's knowledge of or participation in the December 2.1998, cattle theft.

Accordingly, we hold the evidence, viewed in the light most favorable to the prosecution, is legally insufficient to prove appellant was a part of a combination of three or more persons. TEX. PEN.CODE ANN. § 71.01(a) (Vernon Supp.2002).

## B. Continuity.

■ Assuming *arguendo* that a combination of three or more existed, there is no evidence that the group intended to steal cattle on more than one occasion. Clearly, there is no evidence that Adams or Wilson had any intent to steal cattle on more than one occasion. Adams professed ignorance of the December 2 theft, and Wilson had expressly rejected appellant's earlier offer to steal cattle on a regular basis.

The evidence may show that Ervin Starks and appellant stole cattle multiple times, but there is no evidence from any source that they ever recruited a third person to participate in those thefts. And even if those multiple thefts were committed, and even if they were committed by three or more people, that combination certainly ended months before December 2, 1998, the date of the cattle theft alleged in the indictment. In other words, there

can be no continuity in December from a combination that expired in April.

Finally, there is no evidence that Weston continued this criminal association with appellant past November 1998. Weston testified this was the only check-cashing transaction he had participated in. Weston denied ever helping appellant sell any cows, or steal any vehicle. And Weston testified that he never planned or aided appellant in the theft of cattle. There is no evidence to the contrary. While the trial judge may have disbelieved Weston, there still must be some evidence from which a rational trier could find the November incident, as related to Weston, was more than a single, *ad hoc* event. *Wright,* 603 S.W.2d at 840; *Johnson,* 673 S.W.2d at 196. There simply is no such evidence.

Accordingly, we hold the evidence, viewed in the light most favorable to the prosecution, is legally insufficient to prove appellant was a part of a combination carrying on criminal activities. TEX. PEN.CODE ANN. § 71.01(a) (Vernon Supp.2002).

## IV. Reformation of Judgment.

■ In *Bigley v. State,* 865 S.W.2d 26, 28 (Tex.Crim.App.1993), the Court of Criminal Appeals held the Texas Rules of Appellate Procedure authorized a court of appeals to reform a judgment to reflect a conviction on a lesser-included offense after determining the evidence was insufficient to support a conviction for the greater offense. *See id.* Although *Bigley* involved a jury trial, this rationale has been extended to non-jury trials. *Brown v. State,* 35 S.W.3d 183, 190 (Tex.App.-Waco 2000, no pet.). This is so because a trial judge is authorized to find a defendant guilty of any lesser-included offense for which the evidence provides the required proof. *Shute v. State,* 877 S.W.2d 314, 315 (Tex.Crim.App.1994); *Cunning-*

*ham v. State,* 726 S.W.2d 151, 153 (Tex. Crim.App.1987). In finding a defendant guilty of the greater offense, the trial judge necessarily finds the evidence sufficient to convict the defendant of the lesser-included offense. *Watson v. State,* 923 S.W.2d 829, 832–33 (Tex.App.-Austin 1996, pet. ref'd).

■ The instant judgment reflects a conviction for the primary offense of engaging in organized criminal activity, a third-degree felony based on the underlying state jail felony offense of theft of less than ten head of cattle. TEX. PEN.CODE ANN. §§ 71.02(b), 31.03(e)(4)(A) (Vernon Supp.2002). Theft can be considered a lesser-included offense in a charge for organized criminal activity to commit theft. *Smith v. State,* 36 S.W.3d 908, 910 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd). The evidence summarized in part II, *supra,* is sufficient to prove appellant committed the lesser included offense of theft of cattle. Therefore, we modify the judgment of the trial court to reflect a conviction for that offense. TEX.R.APP. P. 43.2. The judgment of conviction, as reformed, is affirmed as to the adjudication of guilt, but the cause is remanded to the trial court for a new hearing on punishment. We affirm the judgment of conviction as modified. TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2000); *Dickson v. State,* 986 S.W.2d 799, 806 (Tex.App.-Waco 1999, pet. ref'd); *Dusek v. State,* 978 S.W.2d 129, 137 (Tex.App.-Austin 1998, pet. ref'd); *Lucero v. State,* 915 S.W.2d 612, 615 (Tex.App.-El Paso 1996, pet. ref'd).