COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

ROY LEE
SEARS,                                                )                      No. 
08-01-00011-CR

                                                                              )

Appellant,                          )                               Appeal from

                                                                              )     

v.                                                                           )                 Criminal District Court No. 2

                                                                              )

THE STATE OF TEXAS,                                     )                      of Dallas County, Texas

                                                                              )

Appellee.                           )                         (TC# F-9929407-I)

 

O
P I N I O N

 

Roy
Sears appeals his conviction for unlawful possession of methamphetamine with
intent to deliver.  Following a bench
trial, the court assessed punishment in the institutional division of the Texas
Department of Criminal Justice for twenty-five years.  On appeal, Appellant contends that the
evidence is legally and factually insufficient to support his conviction
because he acted under a mistake of fact and was entrapped.  We affirm.

FACTUAL SUMMARY













Kevin
Cox, a police officer with the City of Grand Prairie, was on patrol on June 30,
1999.  Observing from a car wash across
the street, Officer Cox saw Appellant at a house on Dalworth
Street, owned by Joe Duly, that had been identified as
a narcotics offense location affiliated with amphetamine manufacturers, users,
and sellers.  Appellant took a blue
plastic grocery bag from the trunk of his car and carried it to the passenger
side of the car, opened the door, and put the bag in the car.  Appellant then entered the driver=s side of the vehicle.  Cox drove down the street in a westerly
direction and back around in the opposite direction when he encountered
Appellant=s vehicle
in the right-hand lane signaling to turn north. 
Cox drove into the left-hand lane waiting to turn north.  Appellant entered the intersection and turned
north; Cox also entered the intersection and traveled north.  Appellant began to travel between two
northbound lanes and then drifted over the center lane into the southbound lane
and oncoming traffic.  Believing
Appellant might be intoxicated, Cox decided to stop him for the traffic
violation.  After the officer activated
his lights, Appellant continued to drive for approximately six blocks.  He made a right turn and then a left turn
before finally coming to a stop.  Officer
Cox believed that there were numerous places where Appellant could have pulled
over.  When asked for his driver=s license, Appellant had none.  Appellant gave the officer his name and date
of birth, and said he had just come from work and was heading home.  Cox told Appellant that he had just seen him
at a house on Dalworth Street.  Afer a silent
pause, Appellant became excited and blurted out repeatedly that he had
something to show the officer.  Cox
called for assistance.  Appellant then
told him he had $300 in counterfeit money that he had just bought.  Officer Cox admonished him to stop talking
and he read Appellant his Miranda[1]
warnings.  Nevertheless, Appellant told
Cox that he had just bought the money and made a deal with a guy named Charlie
to buy some more of it.  When asked why
he was providing this information, Appellant replied that he was working as an
informant for the Irving Police Department. 
Cox asked the name of his informant handler and Appellant could not
produce a name.  Cox arrested him for a
traffic violation and then searched the vehicle.  He opened the passenger-side door and
discovered a blue bag.  Inside the bag
was drug paraphernalia, including baggies, syringes, and a set of digital
scales.  Cox also saw two baggies on the
floorboard near the front passenger seat containing a powdery substance
resembling methamphetamine.  The officer
did not believe that anyone from the Irving Police Department knew about the
alleged counterfeit money transaction. 
The contraband was admitted as State=s
Exhibit No. 23 and identified as methamphetamine with a total aggregate weight
of 28.62 grams, including any adulterants or dilutants.  

The Testimony of the Purported Informant Handler

Jimmy
Myers, a financial crimes investigator with the Irving Police Department,
testified that he had known Appellant since 1984.  There were instances when Appellant had
served as a confidential informant for the Irving Police Department and he had
worked on narcotics cases in 1984 and 1985. 
When Appellant was in the penitentiary, he would contact Myers and Myers
would pass on the information to the narcotics division.  








Myers
denied that Appellant came to him seeking a deal whereby Appellant would
provide information concerning criminal activities in return for some favorable
consideration regarding a February 24, 1999 arrest.[2]  He did acknowledge that he had spoken with Appellant
on the telephone.  Appellant had already
been arrested for the February offense; in fact, Myers estimated that five or
six months elapsed between the time of the February arrest and his telephone
conversation with Appellant.  According
to Myers, Appellant did not mention the February arrest in that
conversation.  He told Myers that he knew
someone who was making counterfeit money. 
Myers replied that he did not handle counterfeit cases and that he
normally referred those to the Secret Service. 
Myers told Appellant to Afind
out what he could@ about
the counterfeit money, but there was no deal to help Appellant on his February
drug offense case.  Myers did not tell
Appellant to buy drugs or set up a meeting with anyone, although he did not set
any limitations on Appellant=s
actions, either.  Myers testified that he
was not supervising Appellant as a confidential informant at the time of the
conversation.

Myers
did not receive any more calls from Appellant, but he did meet with him
personally sometime after Appellant=s
arrest in June.  According to Myers,
Appellant was not working for the Irving Police Department regarding the
counterfeit money at that time.  Myers
called the Secret Service, spoke with Marvin Wright, and told Wright that
Appellant had some information regarding a counterfeiting operation.  Myers introduced Appellant to Secret Service
agent Victor Martinez the same day. 
According to Myers, there was no agreement between Appellant and the
Secret Service agents regarding Aworking
off@ his cases.  Myers acknowledged that he was present at a
surveillance operation set up by the Secret Service at a motel to obtain an
incriminating statement from a counterfeiter, and that Appellant cooperated
with that operation.  But the meeting
with the Secret Service agents did not occur until at least a week after
Appellant=s arrest
in Grand Prairie on June 30 and the surveillance operation did not occur
until after the meeting with the Secret Service agents.  Prior to that time, Appellant=s actions were purely his own.

Appellant=s
Version of Events








Appellant
testified that he was a confidential informant for the Irving Police
Department.  He named Jimmy Myers as one
of the individuals he dealt with in the department.  Appellant claimed he worked on a murder case,
an auto theft ring, and drug cases. 
Someone spoke to him about Aworking
off@ his problems following his February
arrest.  He was told that when he and his
wife were out on bond, they should go see Officer Hayen
of the Irving Police Department. 
Appellant and his wife went to find Hayen but
were told that Hayen was on vacation.  They returned another day but were told Hayen did not want to talk to them.  

After
a period of time, Appellant found out about a counterfeit money operation.  He obtained some of the counterfeit money and
tried to contact the Irving Police Department. 
Appellant stopped a patrol officer and asked if Jimmy Myers were in his
office.  The officer told Appellant that
Myers would be in the office on Monday. 
Appellant gave the officer the money and asked him to give it to Jimmy
Myers and to tell him to call Appellant. 
Myers was not in the office on Monday but Appellant spoke with him on
Tuesday.  Myers told Appellant that if he
could come up with a substantial amount of money, he could get things taken
care of to help Appellant with his problems. 
Myers told Appellant, AIt=s a done deal.  You go get this guy.@  








Appellant
acquired three counterfeit $100 bills from a counterfeiter in Plano.  He negotiated with the counterfeiter so he
could ensnare him.  Appellant believed he
was doing what the Irving Police Department had asked him to do.  The counterfeiter asked Appellant to obtain
an ounce of methamphetamine or speed in exchange for the counterfeit
money.  Appellant went to Joe Dewey=s[3]
house in Grand Prairie and Dewey sold Appellant what he needed.  Appellant told the counterfeiter that he had
made the deal and to meet him at the car wash across the street from Joe Dewey=s house.  Appellant and the counterfeiter then agreed
to meet at Appellant=s
house which was nearby.  As Appellant
approached his house, he saw a police officer parked on the corner of the
street.  The police officer followed
behind Appellant and stopped him. 
Appellant told him what he had in his car and what he was doing.  When Appellant arrived at the police station,
he was approached by a supervisor named John Wright.  Appellant told Wright about his association
with Myers.  Wright confirmed that he had
spoken with Myers and that Myers had said that Appellant was working for him.  On that day or the next, Appellant spoke in
person with Marvin Wright of the Secret Service at his office in Las
Colinas.  Wright had asked Appellant and
his wife to come and see him.  Wright
asked Appellant if he Acould
still do it.@  

After
that meeting, Jimmy Myers called Appellant and asked him to go to the Irving
Police Department and meet with him and someone named Victor Martinez of the
Secret Service.  Appellant continued to
work with them.  He was involved in a
couple of surveillance operations at a motel and at his house under the direct
supervision of Myers and the Secret Service to ensnare the counterfeiter, which
eventually led to the counterfeiter=s
arrest.  Appellant believed he had fulfilled
his part of the contract to make his February arrest Ago
away@ by
assisting with these operations.  He was
never given any limitations on what he could do.  

On
cross-examination, the State impeached Appellant about his prior convictions
for possession of a controlled substance, illegal investment, and forgery.  Appellant admitted that he was not told by
anyone to buy drugs on the day he was arrested in June.  He believed he was being set up when he met
the counterfeiter at the same car wash where Officer Cox was waiting.  








Appellant
was charged by indictment for unlawful possession with intent to deliver  methamphetamine
in an amount of four grams or more but less than 200 grams.  Following a bench trial, the trial judge
found Appellant guilty.  Appellant was
assessed punishment at imprisonment for twenty-five years.  This appeal follows.

STANDARD OF REVIEW

In
Points of Error Nos. One and Two, Appellant claims that the evidence was
legally and factually insufficient to support his conviction because (1) he
acted under a mistake of fact, (2) he was justified in purchasing the drugs as
part of a police investigation, and (3) he was entrapped. 

In
determining the legal sufficiency of the evidence used to support a criminal
conviction, appellate courts view the evidence in the light most favorable to
the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560, 573 (1979); Geesa
v. State, 820 S.W.2d 154, 156-57 (Tex.Crim.App.
1991), overruled on other grounds, Paulson v. State, 28 S.W.3d
570 (Tex.Crim.App. 2000); Hernandez v. State,
946 S.W.2d 108, 110-11 (Tex.App.--El Paso 1997, no
pet.).  Appellate courts do not
resolve conflicts of fact or assign credibility to witnesses, as it is the
function of the trier of fact to accept or reject
any, part, or all of any witness=s
testimony.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Lucero v. State, 915 S.W.2d
612, 614 (Tex.App.--El Paso 1996, pet. ref=d).  An appellate court determines only if the
explicit and implicit findings of the trier of fact
are rational by viewing all the evidence in a light most favorable to the
verdict.  See Lucero, 915 S.W.2d at 614. 
Any inconsistencies in the evidence are resolved in favor of the
verdict.  Id.  If the appellate court sustains a legal
sufficiency challenge, it must render a judgment of acquittal.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).








In
reviewing the factual sufficiency of the evidence to support a conviction,
appellate courts view all the evidence in a neutral light, favoring neither
party.  Johnson v. State, 23
S.W.3d 1,7 (Tex.Crim.App.
2000); Clewis, 922 S.W.2d at 129.  Evidence is factually insufficient if it is
so weak that it would be clearly wrong and manifestly unjust to allow the
verdict to stand, or the finding of guilt is against the great weight of the
available evidence.  Johnson, 23 S.W.3d at 11. 
Therefore, we must consider whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the fact finder=s determination or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  See id.  In performing this review, appellate courts
are to give due deference to the fact finder=s
determinations.  See id. at 8-9; Clewis, 922 S.W.2d
at 136.  The fact finder is the judge of
the credibility of the witnesses and may Abelieve
all, some, or none of the testimony.@  Chambers v. State,
805 S.W.2d 459, 461 (Tex.Crim.App. 1991).  Consequently, a reviewing court may find the
evidence factually insufficient only where necessary to prevent a manifest
injustice from occurring.  See Johnson,
23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO
DELIVER








To
support a conviction for unlawful possession, the State must prove first, that
the accused  exercised
care, control and management over the contraband, and second, that he knew the
matter possessed to be contraband.  See
Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim.App.
1988); Davila v. State, 930 S.W.2d 641, 644-45 (Tex.App.--El
Paso 1996, pet. ref=d).  AA
person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.@  Tex.Pen.Code
Ann. ' 6.03(b)(Vernon 1994).  An
affirmative link must be established between the accused and the contraband
demonstrating both that the accused had control over it and had knowledge of
its existence and character.  See Brown v. State, 911 S.W.2d 744 (Tex.Crim.App.
1995); Menchaca v. State, 901 S.W.2d
640, 651 (Tex.App.--El Paso, 1995, pet. ref=d).  The affirmative link must raise a reasonable
inference that the accused knew of and controlled the contraband.  Christian v. State,
686 S.W.2d 930, 932 (Tex.Crim.App. 1985); Levario v. State, 964 S.W.2d 290, 294 (Tex.App.--El Paso 1997, no pet.).  This affirmative link may be shown by either
direct or circumstantial evidence, and Ait
must establish, to the requisite level of confidence, that the accused=s connection with the drug was more
than just fortuitous.@  Brown, 911 S.W.2d at
747.  Mere presence at the scene
is not sufficient to establish unlawful possession of a controlled substance,
but evidence which affirmatively links the defendant to the controlled
substance will suffice to prove that he possessed it knowingly.  McGoldrick v. State, 682 S.W.2d 573, 578-79 (Tex.Crim.App.
1985).  It is significant whether
the defendant had convenient access to the contraband, whether the police found
the contraband in plain view or in areas private to the accused;[4]  whether the defendant was the driver of the
automobile in which the contraband was found and whether paraphernalia to use
the contraband was in view of or found on the accused.  Villegas, 871 S.W.2d
at 897; Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.--Austin
1991, pet. ref=d).  The number of factors present is less
important than the logical force the factors have alone or in combination in
establishing the elements of the offense. 
Whitworth, 808 S.W.2d at 569.








Appellant
was the sole occupant of a the vehicle when he was
stopped by Officer Cox.  Appellant
appeared nervous and excited.  Two
baggies with a powdery substance later identified as methamphetamine were
discovered on the floorboard near the front passenger seat.  On the passenger seat next to Appellant,
Officer Cox also discovered drug paraphernalia, including baggies, syringes and
a set of digital scales.   The baggie of
methamphetamine on the floorboard and the paraphernalia on the front seat were
both in plain view of Appellant.  He had
convenient access to both areas.  This
evidence is both legally and factually sufficient to support a finding that
Appellant had possession and control of the drugs found in the vehicle.

Mistake of Fact

Appellant
maintains that  he
purchased and intended to deliver the drugs under a mistake of fact because he
believed his purchase was justified as part of a police sting in a the
counterfeit case.  He argues that he was
unaware that Myers did not consider him an informant and that, consequently, no
rational trier of fact could have found that he
purchased the drugs with the intent to deliver them to anyone other than the
counterfeiter.








Section
8.02 of the Texas Penal Code provides, AIt is a defense to prosecution that the actor through
mistake formed a reasonable belief about a matter of fact if his mistaken
belief negated the kind of culpability required for commission of the offense.@ 
Tex.Pen.Code Ann. ' 8.02(a).  The evidence before the trial court presented
conflicting testimony regarding Appellant=s
status as a confidential informant.  Myers
testified that although Appellant had served as an informant in the past, Myers
did not have a deal with the Appellant to serve as a confidential informant in
exchange for favorable treatment on his February arrest.  Appellant contacted Myers about a counterfeit
operation.  Myers told Appellant to Afind out what he could,@ but did not authorize him to purchase
drugs.  Myers insisted that Appellant was
not working as a confidential informant for him prior to his June 30
arrest.  Moreover, Myers testified that
the counterfeit sting operation in which Appellant cooperated was not in
operation prior to Appellant=s
June 30 arrest.  Appellant admitted that
he was not instructed by anyone to purchase drugs on the day he was
arrested.  Based on this evidence, the
trial court could have found that Appellant was not reasonably acting under the
assumption that he was working as an informant when he purchased the drugs
found in his vehicle.

Entrapment








Appellant
also argues that the evidence shows he was entrapped--but for the fact Myers
told him to Afind out
what he could,@
Appellant would not have purchased the drugs with the intent to deliver them to
the counterfeiter.  Entrapment is a
defense to prosecution when a person engages in illegal conduct because he was
induced to do so by a law enforcement agent using persuasion or other means
likely to cause the person to commit the offense.  See Tex.Pen.Code Ann. ' 8.06(a).  However, entrapment does not include A[c]onduct
merely affording a person an opportunity to commit an offense.@ 
Id.  The statute includes
both a subjective and objective test for entrapment.  England v. State,
887 S.W.2d 902, 913 (Tex.Crim.App. 1994).
First, the accused must meet the subjective test that he was induced by law
enforcement to engage in the illegal conduct. 
Id.  Second, he must meet
the objective test that the conduct that induced him to act would have induced
an ordinarily law abiding person of average resistance.  Id. 
In order to effectuate a claim of entrapment to a possessory
offense, Appellant must show that he was persuaded or induced by law
enforcement officers to take care, custody, control or management of the
contraband.  Richardson
v. State, 622 S.W.2d 852, 855 (Tex.Crim.App.
1981).  Entrapment does not exist
if the evidence indicates that the criminal design originated in the mind of
the defendant and that law enforcement merely furnished an opportunity for
Appellant to commit the crime.  Torres v. State, 980 S.W.2d 873, 875 (Tex.App.--San
Antonio 1998, no pet.). Upon review, the entrapment defense centers on
the legal sufficiency of the evidence.  Id. at 875-76. 
The following exchange occurred during Appellant=s
testimony:

Q.[State]  Okay.  So nobody knew you were gonna
go to this house and buy dope?

 

A.[Appellant]  No, ma=am.

 

Q.  That was your own thing to do?

 

A.  Yes, You=re
right.

 

Q.  But Jimmy Myers did not tell you to go to
somebody=s house
and buy dope?

 

A.  No, he did not.

 

Q.  And he just asked you to get information; is
that correct?  And you just proceeded on
as you saw fit?

 

A.  To see what I could develop.

 

Q.  Okay. 
And it was up to you, then, to do whatever you thought you needed to
do.  I believe that was your testimony?

 

A.  I thought so. 


 








While he
acknowledged that he did not set any limitations on Appellant=s actions, Myers testified that there
was no agreement for Appellant to Awork
off@ his February arrest.  Myers told Appellant to Afind out what he could@ but he did not tell Appellant to buy
drugs or set up meetings with anyone. The evidence presented to the trial court
does not demonstrate that Appellant was induced by law enforcement to engage in
illegal conduct.  The plan to negotiate a
deal with the counterfeiter and then exchange the counterfeit money for drugs
was devised by Appellant himself.  There
is no evidence that the police instructed Appellant to carry out the plan.  While Myers=
comment that Appellant Afind
out what he could@ may have
influenced Appellant=s
belief that he was acting within his authority when he obtained the drugs, we
cannot say that his instruction in any way induced or persuaded Appellant to
take care, custody, control, or management of the contraband.  When examining the evidence in the light most
favorable to the prosecution, we conclude that the trier
of fact could have found against the Appellant on the issue of entrapment
beyond a reasonable doubt. 

We overrule
Points of Error Nos. One and Two and affirm the judgment of the trial court.

 

 

July 25, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]  Miranda v. Arizona, 384 U.S.
436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).





[2]  J.R. Hayen, a police officer for the City of Irving, executed a
narcotics search and arrest warrant at Appellant=s
residence on February 24, 1999.  When
Officer Hayen arrived, Appellant and his wife were at
home; Appellant came out of a bathroom with a tactical officer while his wife
emerged from a back bedroom.  After the
house was searched, the Searses were placed under
arrest for possession of methamphetamine. 
The laboratory results identified the contents of the baggies and the
syringes found by the officers as methamphetamine with a total aggregate weight
of 1.44 grams, including any adulterants or dilutants.      

Defense counsel asked Officer Hayen if he were aware that Appellant and his wife talked
to some Irving police officers the day of the February arrest about being
confidential informants for the Irving Police Department.  Hayen said he did
not know of a conversation that day but he acknowledged that Appellant had been
working as an informant for a police department before, although he was not
sure to whom he was assigned.  





[3]  This Joe Dewey
is likely the party referred to as AJoe Duly@ during Officer Cox=s
testimony.  The discrepancy may be a
spelling error by the court reporter.





[4]  See Guiton v. State, 742 S.W.2d 5, 8 (Tex.Crim.App.
1987); Villegas v. State, 871 S.W.2d 894, 897 (Tex.App.--Houston
[1st Dist.] 1994, pet ref=d).