Lorenzo Estabon THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–93–151 CR, 09–93–152 CR.

Court of Appeals of Texas, Beaumont.

Submitted April 7, 1994.

Decided May 4, 1994.

Jack McCormick, Conroe, for appellant.

Daniel Rice, Dist. Atty., Michael R. Davis, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The appellant was indicted by the Grand Jury for the County of Montgomery for two separate felony offenses of aggravated robbery under TEX.PENAL CODE ANN. § 29.03(a). The State moved that these two cases be consolidated and such motion was joined by the defendant's counsel; whereupon, the trial court granted the motion for consolidation. Appellant waived his right to a jury trial. The trial court convicted the appellant of the aggravated robbery committed on or about May 8, 1992 (trial cause number 92–07–00630) and also convicted the appellant of the aggravated robbery committed on or about April 21, 1992 (trial cause number 92–07–00631) in a trial before the bench held on May 25, 1993. The trial court found the enhancement paragraphs contained in the indictments to be true. The trial court made an affirmative finding that the defendant used and exhibited a deadly weapon during the commissions of the said offenses. The trial court sentenced the appellant to sixty years confinement in the Texas Department of Criminal Justice, Institutional Division, in each conviction—said sentences to be served concurrently. The appellant now appeals.

The appellant raises one point of error germane to both appeals, being:

> The evidence was insufficient to show that Appellant used or exhibited a deadly weapon, i.e., a knife, as charged in the indictment.

But prior to addressing the appellant's sole point of error we will review the facts.

### Background Facts of the April 21, 1992, Robbery

On April 21, 1992, Barbara Dale McCann Pope, the complainant, was working for the National Convenience Stores (Stop–N–Go) at 1700 North Frazier in Conroe, Montgomery County. Ms. Pope was in the process of cleaning broken glass in the cooler when she heard the buzzer which alerted her that someone was coming into the store. Ms. Pope said that as she exited the cooler, she looked to her left and saw a man at the cash register, just hitting several buttons. She started walking toward the stranger. As she was approaching the appellant, she recalled seeing that both hands of the appellant were at his side and as she got closer and closer to the stranger, she heard a sound like a "click"

and up came a knife. He was about five to six feet from her when he pulled the knife up from his side. At the same time he was walking toward her exhibiting the weapon at her. The knife was in his right hand. At that time he yelled at her and said "Open the drawer, give me the money". At that time he was about three and a half feet from the complainant, Ms. Pope. Ms. Pope said that she was quite upset and that she was in fear of her life at that time. Finally, she reached the cash register, but he kept yelling at her to get there and to give him the money and she opened the drawer in a hurry. He was standing directly across the counter from her at that time. As she opened the drawer, the robber grabbed across the counter reaching for the money that was inside of the cash drawer which was composed of tens, fives, and ones. She immediately dialed 911 for help after the robber left the scene. She described the knife as having a steel blade probably five to six inches in length, being very sharp, and it looked to her as if it were a hunting knife. The defendant did not cross-examine this witness.

### Background Facts of the May 8, 1992, Robbery

On May 8, 1992, at about 8:00 p.m., Liz Gregory, the complainant, was working at Hardy's Grocery located in Montgomery County, when the appellant entered the store and robbed the store. Earlier in the day the appellant came into the store, purchased a drink, and asked Ms. Gregory what time the store closed. He came back later on that evening, entered through the front door and started behind the counter where Ms. Gregory was working. She said as he was moving toward her he exhibited a screwdriver and told her to open the register. Ms. Gregory did as she was told. She pushed the "No Sale" on the cash register and opened the register. He grabbed all the money out of the register, looked underneath the drawer, and asked if there was any other money there. Ms. Gregory informed the defendant that there was not. He took all the money, started out the door, and then turned back around and asked her where the telephone was located. She pointed to the phone and picked it up and handed it to the defendant

and at that time he picked the cord up and bent it and cut it, using the screwdriver. Ms. Gregory described the screwdriver as being a phillips screwdriver. She testified that she was in fear of her life, believing that the defendant would use the screwdriver to cause her death or serious injury to her person. The complainant testified that the defendant was approximately two feet away from her. She followed the defendant out the door and she was able to observe the license plate number of the car he was driving. Ms. Gregory positively identified the appellant as the person who robbed her on that day. The defendant did not cross-examine her.

### Standard of Review

■ When an insufficiency of the evidence point is raised, we follow the standard that was set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) as the appropriate standard of review. In *Jackson*, the Court held that where the evidence has been addressed to be insufficient, then the court has a duty or is guided to review the evidence in the light most favorable to the verdict or judgment. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, an affirmance is proper. *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989). After a thorough review of the records and the briefs, we find that the uncontradicted testimony of the two witness-complainants was sufficient to support the judgment and a finding of the use and display of a deadly weapon.

■ A brief excerpt of the testimony of Ms. Pope clearly shows support for the finding of the trial court:

Q Did anything unusual happen on April 21st, 1992 while you were at work?

A Yes, it did. I was in the cooler cleaning broken bottles and I heard the door and I came—

Q Let's stop right there. If you would, describe for the Judge, please, where the cooler is in relation to the counter and the cash register and the door.

A All right. I have approximately a 15–ft cooler on the left side of the building and I was in, midway of that building and I heard the buzzer which alerted me that someone was coming in the door. So as I left out the cooler and looked to my left, I saw this man at the cash register just hitting my buttons and my first thought was "What is he doing there."

. . . .

Q When you came out of the cooler, how far away would you be from him?

A I would have been about probably 15 feet maximum, but he kept walking toward me as I was walking toward him and—

Q Did he have anything in his hand?

A Well, I didn't notice until he got even with—we had some large beer coolers sitting on the floor at the right and he had his hands both down to the side and when [he] got even with that cooler, then I heard like a click and up came this knife and then I knew immediately what was going on.

Q When you saw the knife, what did you think?

A I just thought I'm being robbed, this guy is going to rob me.

Q What did you think he was going to do with the knife?

A Well, anytime you have a dangerous weapon, you can do bodily harm and I had a lot of fear because my back literally froze in fear and I had never had a knife pulled on me before.

Q How far away from you was he with this knife?

A When he pulled the knife up from his side, he was approximately five to six feet from me.

. . . .

Q Now, all of this time that he is telling you this, does he have the knife in his hand?

A In his right hand.

Q How close is he to you with that knife?

A This time he keeps yelling and doing—saying "Open the drawer, give me the money," he's about three and a half feet from me.

Q Now, you are making some movements with your right hand. Was he moving the movements or making—

A He was quite upset, quite frightened and from all that I could gather, he wanted to hurry and get this over with and get out of there. He was very nervous.

. . . .

Q Can you describe the knife, please?

A It was—all I could tell you about the knife is that it was a steel blade and that you could see brass, the brass handle because his hand covered the complete handle, so I would say the handle couldn't have been more than probably four and a half, you know, five inches long, but the blade itself was a good six inches long.

Q Did it appear to be sharp?

A Very. It looked like it could have been a hunting knife.

From the testimony of Ms. Gregory, the complainant-victim of the May 8, 1992, robbery we quote the following:

Q Did anything unusual happen on that date while you were at work?

A Yes.

Q And what happened?

A I was watching TV and I was looking to the left of me and I heard the door open and I just got up slowly and when I turned around, there was a man behind the counter with a screwdriver holding it up to my face.

. . . .

Q Had you seen the Defendant earlier?

A Yes.

Q And when you say—when he came in, are you on one side of the counter and he's on the other?

A Well, he came in the front door and we have like a swinging door. I guess it would be to his left and whenever I turned around, he was opening the swinging door and he was behind the counter with me.

Q And then he was coming towards you?

A Yeah, he was coming towards me with a screwdriver, and he told me to open the register and so I went over and I pushed "No Sale" on the register and the register opened and he grabbed all the money out of the register and he looked underneath the drawer and I told him there wasn't any money under the drawer. So he took all the money and then he started out the door or started out and he turned back around and asked me where was the telephone and I pointed to the telephone and he picked up the adding machine cord and was going to cut the adding machine cord. I told him that's not the telephone and then I picked the telephone up and I was handing him the telephone and he just picked the cord up and bent it and cut it.

Q What did he use to cut the cord with?

A The screwdriver.

Q Now, let's talk about the screwdriver. Was it just a regular screwdriver that everybody has seen?

A It was a phillips screwdriver.

Q Did that screwdriver frighten you?

A Very much.

Q Why?

A Because if I wouldn't have gave him the money, he could have killed me with the screwdriver.

Q So you were afraid that he might kill you?

A Yes.

Q How close was he to you with the screwdriver?

A Probably about two foot.

TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 74) defines a deadly weapon as:

(A) a firearm of anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Although a knife is not, per se, a deadly weapon, there are factors that can be used and considered in determining whether a knife is a deadly weapon; such as (1) the length of the blade, (2) the proximity of the assailant to the victim, (3) the shape and sharpness of the blade, and (4) the manner in which the knife is used or the manner of its intended use, as well as the capacity of the particular knife exhibited or used by the accused. It is very important to note that an object may be a deadly weapon even though no wounds are inflicted. *Garza v. State*, 695 S.W.2d 726 (Tex.App.—Dallas 1985, rev'd on other grounds).

It is important that each case must be examined on its facts to determine whether the manner or the weapon used or intended to be used was such as to allow a fact-finder to determine that the weapon was deadly. *Brown v. State*, 716 S.W.2d 939 (Tex.Crim. App.1986). In the May 8, 1992. robbery, the deadly weapon was determined to be a phillips screwdriver. In *Beck v. State*, 647 S.W.2d 55 (Tex.App.—El Paso 1983, rev'd on other grounds), a screwdriver was found to be a deadly weapon although no injury was ultimately inflicted. In *Madden v. State*, 628 S.W.2d 161 (Tex.App.—Eastland 1982, pet. ref'd), expert testimony described screwdrivers as a class of implements which could be used to inflict death or serious injuries.

 Not only do we find the testimony of Ms. Pope was sufficient to establish that the knife in question was a deadly weapon, but also we determine the additional testimony of an expert witness, Carl Kent, was sufficient as to the screw driver. Mr. Kent was of the opinion that any knife which had a blade of six inches was capable of causing death or serious bodily injury. Investigator Kent testified clearly and unequivocally that he described and opined the knife as being a deadly weapon. Investigator Kent was retired from the Houston Police Department after twenty-one years, the last twelve of which were spent in the homicide division. He testified that he had investigated over a thousand homicides and from his experience, he had no doubt that such a knife as the one described by Ms. Pope could certainly cause death or serious bodily injury. Likewise, Investigator Kent unequivocally testified that a phillips screwdriver, such as the one described by Ms. Gregory, could cause death or serious bodily injury and could be considered a deadly weapon.

 Serious bodily injury has been defined by TEX.PENAL CODE ANN. § 1.07(34) as

"means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." If there is any evidence that establishes guilt beyond a reasonable doubt and if the trier of fact believes that evidence, then this appellate court is not in a position to reverse the judgment on sufficiency of the evidence grounds.

■ TEX.CODE CRIM.PROC.ANN. articles 42.12 and 42.18 requires that a deadly weapon must have been either used or exhibited during the commission of a felony or in immediately flight therefrom. As an appellate court, we are under a duty to review the facts to determine if the trier of facts in his affirmative finding has had the evidence to support his judgment beyond a reasonable doubt and if so found, we must affirm the judgment. If all the evidence presented before the trier of fact shows, beyond a reasonable doubt, that the complainants were placed in fear and that there was evidence to show that there was a deadly weapon involved, then as an appellate court we must not second guess the finder of fact. Therefore, we overrule appellant's sole point of error and affirm the judgments of the trial court.

AFFIRMED.