**Jesus Felipe LUCERO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–94–00396–CR.**

Court of Appeals of Texas,
El Paso.

Jan. 18, 1996.

John Gates, Assistant City Attorney, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a conviction for the offense of aggravated robbery. A jury convicted the appellant, Jesus Lucero, and the trial court sentenced him to forty years' incarceration in the Texas Department of Criminal Justice—Institutional Division. In his sole point of error, Lucero challenges the sufficiency of the evidence to support his conviction. Finding insufficient evidence to support the implied finding that Lucero used a deadly weapon, we reform the judgment to reflect conviction for the offense of robbery; additionally, we reverse the judgment imposing punishment and remand for another punishment hearing.

### FACTS

On May 7, 1994, Yvonne Wasinger took her sixty-nine year old mother to the doctor, and then to a Furr's grocery store to purchase medicine. As Wasinger and her mother approached Wasinger's car to leave the Furr's, Lucero approached them and mumbled something Wasinger could not understand. Lucero was "very close" to Wasinger and her mother. Lucero was standing close enough to make Wasinger uncomfortable. Wasinger noticed a red and off-white tool handle in Lucero's left hand. Wasinger could tell that the red handle was part of a tool of some sort, but she could see only the handle. She could not tell what kind of tool it was. Lucero looked at Wasinger and then looked down at her purse, which was between Wasinger's body and her grocery cart. Wasinger testified that at that point, she was afraid of imminent bodily injury or death because she did not know what Lucero was going to do, and she feared that he would hit her. Lucero grabbed Wasinger's purse and ran.

Wasinger stood "frozen" for a few seconds. She became angry because she felt Lucero had targeted her because she was with her elderly mother, and she began to run after Lucero. As Wasinger chased Lucero, he turned around and "swiped" at her. Wasinger did not, however, see the tool in Lucero's hand when he swiped at her. Wasinger continued following him. Lucero got in the passenger side of a green Gremlin car. Wasinger "dove in" the driver's side window, started to strike the driver, and demanded her purse back. Wasinger saw her purse on the floor board of the passenger side, at Lucero's feet. She saw the same tool handle she had seen in Lucero's hand now sticking out of her purse. She still could not see what kind of tool it was. Neither Lucero nor the driver attempted to pick the tool up off the floor board. The driver of the green Gremlin began to pull out of the parking lot into the street, and Wasinger kept hitting him and trying to get her purse. Cars were veering off to avoid Wasinger and the Gremlin. Wasinger was afraid that she was going to be "sandwiched between ... two cars." She testified that "when I saw the tool, I said, you, know, this isn't worth it. I'm going to get killed out here, and I let go and jumped out." Shortly thereafter, the driver veered into oncoming traffic and ran into a ditch, wrecking the Gremlin.

Luis Rico, an off-duty police officer who happened to be at the scene, held Lucero until on-duty officers arrived to arrest him. Wasinger recovered her purse from the Gremlin. She saw the whole tool for the first

time at this point. The tool was a screwdriver approximately fourteen inches in length. Officer Rico testified that he had observed Wasinger chasing Lucero, and that he saw that Lucero had a long screwdriver in one hand and a purse in another as Wasinger chased him. Rico gave his opinion that in his experience as a police officer, a screwdriver can be a deadly weapon if it were "put ... against a person...." Another officer, Martin Medina, similarly testified that a screwdriver can be a deadly weapon if it is held against a person's "side, or up to their body...." Lucero testified in his own defense. He admitted that he snatched Wasinger's purse, but he denied that he had any sort of tool with him when he took the purse.

### STANDARD OF REVIEW

In his sole point of error, Lucero asserts that the evidence is insufficient to prove that he used or exhibited a deadly weapon and thus is insufficient to prove all the elements of aggravated robbery. In passing on sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843, *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

### SUFFICIENCY OF EVIDENCE

A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he knowingly or intentionally threatens or places another in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.02(a)(2) (Vernon 1994). A person commits aggravated robbery if he uses or exhibits a deadly weapon in the course of a robbery. TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon 1994). In the indictment, the state alleged, in pertinent part, that Lucero "did then and there ... place the said complainant in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a screwdriver...." A screwdriver is not manifestly designed to inflict serious bodily injury or death. *See* TEX.PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994). The state therefore was required to prove the screwdriver, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See Thomas v. State*, 875 S.W.2d 774, 778 (Tex.App.—Beaumont 1994, pet. ref'd); TEX.PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(46) (Vernon 1994). The appellate court must evaluate each case on its facts to determine whether the particular manner of use or the weapon used or intended to be used was such as to allow a fact finder to determine that the particular weapon was deadly. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex.Crim.App.1986).

The evidence in this record indicates that Lucero arguably exhibited the screwdriver to Wasinger. The state failed, however, to present sufficient evidence that the screwdriver was, in the manner of its use or intended use, capable of inflicting serious bodily injury. The first time Lucero exhibited the screwdriver was when he confronted Wasinger at her car. Wasinger testified that she saw the handle of the screwdriver in Lucero's hand, but she could not tell what kind of tool it was. Although she stated that she was in fear of imminent bodily injury or death when Lucero confronted her at the car, Wasinger attributed her fear to the possibility that Lucero would hit her, and to the fact

that she "didn't know what he was going to do." She never testified that she feared imminent bodily injury or death resulting from use of the as yet unidentified tool, or that the tool frightened her in any way at that time.

■ The only time Wasinger testified that the tool made her think she was "going to get killed," the tool was in her purse on the floorboard of the passenger side of the Gremlin, as she hung on the driver's side. Lucero did not pick up the screwdriver at that time. The effective range of the weapon is of primary consideration in categorizing an instrument as deadly. *Herbert v. State*, 631 S.W.2d 585, 586 (Tex.App.—El Paso 1982, no pet.). In this case, the screwdriver was merely lying on the floor, inside a purse several feet away from Wasinger. No one was holding it. Under these circumstances, the screwdriver could not, in that manner of use, constitute a deadly weapon. *See e.g. Davidson v. State*, 602 S.W.2d 272, 274 (Tex. Crim.App.1980) (swiping with three inch knife blade at a distance of six feet from the victim not sufficient to show that knife was deadly in the manner of its use); *Alvarez v. State*, 566 S.W.2d 612, 613–14 (Tex.Crim.App. 1978) (swinging linoleum knife at a distance of four feet did not constitute manner of use posing a threat of serious bodily injury or death despite victim's testimony of fear). Wasinger's testimony was therefore insufficient to support the jury's finding that the screwdriver was a deadly weapon.

■ The state argues that the testimony of Officers Medina and Rico was sufficient to establish that the screwdriver was a deadly weapon. Generally, expert testimony is sufficient to establish that an object, including a screwdriver, is a deadly weapon capable of causing death or serious bodily injury in the manner of its use or intended use. *See Thomas*, 875 S.W.2d at 778 (testimony of investigator that a Phillips screwdriver such as the one used in the offense could cause death or serious bodily injury sufficient to support jury finding of deadly weapon). The officers in this case, however, testified that a screwdriver is capable of inflicting death or serious bodily injury when put against a person or held against a person's side. Wasing-

er testified that Lucero never put the screwdriver to her side or in any way touched her with it. In this case, the only testimony establishing that a screwdriver can be, in its use or intended use, a deadly weapon, is premised on the screwdriver being held against the victim's body. The testimony in this case indicates that Lucero never held the screwdriver to Wasinger's body. Thus, the expert testimony that a screwdriver can be a deadly weapon when held against the victim's body is insufficient to support the jury's deadly weapon finding on the facts of this case.

## CONCLUSION

Accordingly, we find the evidence insufficient to support the jury's verdict for the offense of aggravated robbery and we sustain Lucero's point of error. We note that the trial court also submitted the offense of robbery to the jury. Robbery is a lesser included offense of aggravated robbery. By finding appellant guilty of aggravated robbery, the jury necessarily found appellant guilty of robbery. We conclude the evidence is sufficient to support appellant's guilt of the lesser included offense of robbery. We reform the judgment to reflect conviction for the lesser included offense of robbery and to delete the deadly weapon finding. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *Goodwin v. State*, 815 S.W.2d 586, 588 (Tex. Crim.App.1991); *Lockett v. State*, 874 S.W.2d 810, 818 (Tex.App.—Dallas 1994, pet. ref'd). We affirm appellant's conviction as reformed. We remand this cause for a new trial on punishment pursuant to TEX.CODE CRIM. PROC.ANN. art. 44.29(b) (Vernon Supp.1996).

Accordingly, the judgment is reformed to reflect conviction for the offense of robbery. We reverse that part of the judgment assessing punishment, and remand the cause to the trial court for a new punishment hearing.