COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
SHARON BRAWDY WILLCOX,                     )                  No. 08-02-00474-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  161st District Court
)
THE STATE OF TEXAS,                                   )                  of Ector County, Texas
)
                                    Appellee.                          )                  (TC# B-29,707)

MEMORANDUM OPINION

            Sharon Brawdy Willcox appeals her conviction for possession of methamphetamine. 
Appellant was convicted by a jury and sentenced to eight years’ imprisonment. We affirm.
FACTUAL SUMMARYAround 6:20 a.m. on January 5, 2002, Odessa Police Department patrol officers Cary
Sampson and Lloyd Lance Pavelka were dispatched to the Peppertree Apartments in response to a
call about suspected drug activity and a strong odor at apartment no. 76 or 77. Sampson and Pavelka
arrived about the same time, and as they approached the apartment building, they smelled the strong
odor of ether, indicating possible methamphetamine production. As the officers got closer to
apartment no. 76, the smell grew stronger and they heard people talking and plates clattering. 
Pavelka believed that there was a meth lab inside the apartment. He went to the back of the building
to secure the windows while Sampson knocked on the door. Pavelka stayed in the back until
Sampson had gained entry into the apartment. The door was answered by a male later identified as
John Willcox, Appellant’s husband. Once the door was opened, Sampson saw a jug with a tube
sticking out of it sitting on the coffee table and white powder on the table. Sampson also saw a purse
sitting on the kitchen counter, and no one walked over to the purse while he was inside the
apartment. Sampson also saw other people moving around in the apartment, but they were not out
of his sight for more than a few seconds, and they held nothing in their hands. There were four
individuals in the apartment, one of whom was Appellant. She was sitting on the couch, could not
keep her hands still and acted jittery. Pavelka characterized Appellant as agitated. 
            When Pavelka entered the apartment, he observed a bottle on the floor, a bottle with a tube
on the coffee table, coffee filters, and a purse by the couch. The individuals appeared to him to be
agitated and one had scratch marks, which is consistent with using large amounts of meth. They
were detained while a protective sweep was conducted. Sampson smelled ether. Because Willcox
appeared to be high and paraphernalia was in plain view, he asked everyone to step outside. When
they failed to respond, Sampson handcuffed them and ushered them into the police vehicles. 
Sampson asked who lived at the apartment and determined that the tenant was not among the four. 
Sampson was sure that the individuals were checked for weapons and that nothing was found on
Appellant’s person. 
            Odessa Police Department Sergeant Jesse Duarte was also called to the scene. Duarte
supervised the narcotics unit and was called out any time there was a possible meth lab. Based on
Sampson’s observations and the smell of ether, Duarte called Odessa Police Department narcotics
division investigator, Jordan Medrano. Duarte also contacted the DEA because the department did
not have the proper equipment to enter the apartment. At the scene, Medrano gathered information
for a search warrant and Sampson helped him prepare the affidavit. Medrano characterized
Appellant as distant; it took a while for her to answer his questions. 
            Once the warrant was issued, DEA task force officer Layton Fincher entered the apartment
to check air quality and the explosive nature of the atmosphere. When he tested the atmosphere,
Fincher found the presence of ether but determined the air quality tested below the threshold that
would require the task force to wear protective gear and that the environment was not explosive. To
secure the apartment, Fincher removed several items, including a soft drink bottle converted into a
gas generator, an improvised reaction vessel with leftover byproducts, and a one-gallon bleach bottle
holding what Fincher believed was muriatic acid. The generator was found in the bathtub, and the
bleach bottle and reaction vessel were found in the living room. These items were removed due to
their hazardous nature and picked up by a special hazardous cleanup crew; they were unavailable at
trial. 
            DEA Agent Dean Cook also assisted in the search of the apartment. Medrano served as the
inventory officer and took custody of the seized items. We detail here all of the testimony
concerning a purse, which will become important to our analysis. We first reiterate our earlier
recitation that Sampson saw a purse on the kitchen counter when Willcox answered the door. 
Pavelka testified he saw a purse by the couch when he entered the apartment. Duarte explained that
he saw a purse on the floor and put it on the kitchen counter. Cook was the officer who actually
searched the purse and that at that time the purse was on the counter. He remembered that the purse
was open, not latched or locked. Items seized from the purse and a smaller bag--described as a
make-up bag--included a purple box with weighing scales, small gram-size ziplock packets
containing meth, empty small gram packets which are commonly used to package meth, a syringe
containing a liquid substance, a glass test tube holding white powder believed to be meth, mail
bearing Appellant’s name, and $1,810. Appellant’s identification was found in the purse. 
Additional testimony revealed that the test tube, syringe, and smaller baggies were actually found
in the smaller make-up bag inside the purse. Medrano indicated that the smaller bag was separate
from the purse when he arrived at the scene. Cook explained that the smaller bag had been removed
from the purse at the time police photographs were taken. He admitted that no identification was
found in the make-up bag. Appellant claimed ownership of the currency, which she described as
wages. Other items recovered from the apartment included coffee filters with meth waste called
“bones,” a bleach bottle with acid, a soda bottle with tubing, and a pitcher holding a milky white
substance believed to be ether. All four individuals were arrested and charged with possession of
methamphetamine. 
            Dennis Hambrick, a chemist with the Texas Department of Public Safety, analyzed the
evidence for controlled substances. The white powder in the coffee filter tested negative for meth. 
Powder found on the coffee table, weighing .35 grams, tested positive as did powder from the
ziplock bags, which held .89 grams of meth, and the vial, which contained .29 grams. Two exhibits
were not tested; one due to the presence of blood, and the other due to the small residue amount. 
LEGAL & FACTUAL SUFFICIENCY
            In Point of Error No. One, Appellant complains that the evidence is legally or factually
insufficient to sustain her conviction for possession of methamphetamine. She contends that because
no drug or drug paraphernalia was found on her person or in her belongings, the State’s case was
predicated on contraband found near her belongings.
 

Standard of Review
            In determining the legal sufficiency of the evidence used to support a criminal conviction,
appellate courts view the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560, 573
(1979); Geesa v. State, 820 S.W.2d 154, 156-57 (Tex.Crim.App. 1991), overruled on other grounds,
Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000); Hernandez v. State, 946 S.W.2d 108,
110-11 (Tex.App.--El Paso 1997, no pet.). Appellate courts do not resolve conflicts of fact or assign
credibility to witnesses, as it is the function of the trier of fact to accept or reject any, part, or all of
any witness’s testimony. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Lucero
v. State, 915 S.W.2d 612, 614 (Tex.App.--El Paso 1996, pet. ref’d). An appellate court determines
only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence
in a light most favorable to the verdict. See Lucero, 915 S.W.2d at 614. Any inconsistencies in the
evidence are resolved in favor of the verdict. Id. If the appellate court sustains a legal sufficiency
challenge, it must render a judgment of acquittal. Clewis v. State, 922 S.W.2d 126, 133
(Tex.Crim.App. 1996).
            In reviewing the factual sufficiency of the evidence to support a conviction, appellate courts
view all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1,7
(Tex.Crim.App. 2000); Clewis, 922 S.W.2d at 129. Evidence is factually insufficient if it is so weak
that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of
guilt is against the great weight of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, we
must consider whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact
finder's determination or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof. See id. In performing this review, appellate courts are to give due deference to
the fact finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact finder is the
judge of the credibility of the witnesses and may “believe all, some, or none of the testimony.”
Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, a reviewing court
may find the evidence factually insufficient only where necessary to prevent a manifest injustice
from occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).
Possession of a Controlled Substance
            A person commits the offense of possession of methamphetamine if she knowingly or
intentionally possesses the controlled substance. See Tex.Health&Safety Code Ann. §§
481.102(6), 481.115 (Vernon 2003 and Vernon Supp. 2004). Possession is defined as “actual care,
custody, control, or management.” Id. at § 481.002(38). To support a conviction for unlawful
possession of a controlled substance, the State must prove that the accused exercised actual care,
custody, control, and management over the contraband, and that the accused knew the substance she
possessed was contraband. See Brown v. State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995);
Menchaca v. State, 901 S.W.2d 640, 651 (Tex.App.--El Paso 1995, pet. ref’d). When the defendant
is not in exclusive possession or control of the place where the contraband is found, the State must
prove independent facts and circumstances affirmatively linking her to the contraband. Hackleman
v. State, 919 S.W.2d 440, 444 (Tex.App.--Austin 1996, pet. ref’d, untimely filed). An affirmative
link generates a reasonable inference that the accused knew of the contraband’s existence and
exercised control over it. See Brown, 911 S.W.2d at 747; Menchaca, 901 S.W.2d at 651. By either
direct or circumstantial evidence, the State “must establish, to the requisite level of confidence, that
the accused’s connection with the drug was more than just fortuitous.” Brown, 911 S.W.2d at 747.
            Appellant was not in exclusive control of the residence where the methamphetamine was
found. Therefore, we must examine the record to find additional facts and circumstances that
affirmatively link Appellant and the contraband. Those circumstances may include whether (1) she
was present when the search was executed; (2) the contraband was in plain view; (3) the contraband
was in close proximity to or easily accessible by Appellant; (4) she was under the influence of the
contraband; (5) she was in possession of other contraband when arrested; (6) she made incriminating
statements upon arrest; (7) she attempted to flee; (8) she made furtive gestures; (9) there was an odor
of the contraband present; (10) other contraband or drug paraphernalia were present; (11) she owned
or had a right to possess the place where the contraband was found; (12) the contraband was found
in an enclosed place; (13) there was a significant amount of contraband; and (14) she possessed
weapons or large amounts of cash. See de la Garza v. State, 898 S.W.2d 376, 379 (Tex.App.--San
Antonio 1995, no pet.); Hernandez v. State, 867 S.W.2d 900, 904 (Tex.App.--Texarkana 1993, no
pet.). If the contraband is found in a personal item in which ownership is attributed to the accused,
the accused is affirmatively linked to the contraband. See Guiton v. State, 742 S.W.2d 5, 10
(Tex.Crim.App. 1987). However, this list is not exhaustive, and the number of affirmative links
found is not as important as the degree to which they tend to link Appellant to the contraband. See
Williams v. State, 906 S.W.2d 58, 65 (Tex.App.--Tyler 1995, pet. ref’d).
Analysis of the Affirmative Link Factors
            Although no contraband was found on Appellant’s person, there was evidence affirmatively
linking her to the contraband. Appellant was present when the search was executed and officers
believed she was under the influence of the contraband. She was agitated, could not sit still, acted
jittery, and was non-responsive to questioning. Duarte testified that these indicators were common
with usage of meth. There was a strong odor of ether in the apartment and other contraband and
paraphernalia were present. Appellant was established as the owner of the purse; the searching
officer testified that a make-up bag was found inside the purse; and contraband was found inside the
make-up bag. The purse contained a large sum of cash which Appellant claimed was hers. We
conclude that this evidence affirmatively linked Appellant to the methamphetamine.
            While Appellant argues that the contraband was found in a small make-up bag on top of or
beside her purse many feet away from where she was sitting when officers arrived, she admits that
there was conflicting testimony as to where the make-up bag was found. The jury as the trier of fact
was entitled to believe or disbelieve the testimony of the officers on that issue. See Matson v. State,
819 S.W.2d 839, 846 (Tex.Crim.App. 1991). While Appellant suggests that the other female in the
apartment had access to the open purse, Officer Sampson testified that this individual was never out
of his sight for more than two to three seconds and that she did not have any objects in her hands. 
The jury was entitled to give whatever weight it chose to the above testimony.
            After reviewing the record under the appropriate standards, we conclude the evidence is
legally and factually sufficient to support the Appellant’s conviction. Accordingly, Appellant’s sole
point is overruled and the judgment is affirmed.

August 12, 2004                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Panel No. 1
Larsen, McClure, and Chew, JJ.

(Do Not Publish)