COURT OF APPEALS















COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

MICHAEL SMITH,                                              )

                                                                              )              
No.  08-02-00315-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20010D06090)

                                                                              )

 

 

O
P I N I O N

 

Appellant Michael
Smith appeals his conviction for unauthorized use of a motor vehicle.  Over Appellant=s
plea of not guilty, a jury found Appellant guilty of the charged offense and assessed
punishment at a fine of $3,600 and 2 years=
confinement in a state jail.  On appeal,
Appellant challenges the legal and factual sufficiency of the evidence to
sustain his conviction and contends the trial court erred in allowing the State
to present extraneous offense evidence.  
We affirm.








On November 27,
2001, El Paso Police Officer Charles Walker was on patrol in Northeast
 El Paso when he observed a Winnebago-type RV speeding on McCombs street
.  Officer Walker pulled the vehicle over for a
traffic stop and checked the RV=s
license plate number.  Officer Walker
identified Appellant as the driver. 
Information from the plate number indicated that the RV had been
reported stolen in Colorado
by complainant Margery Black.  Officer
Walker confirmed that the vehicle was stolen on the department=s communication channel.  Officer Walker then placed Appellant under
arrest.  Appellant told the officer that
he had the owner=s
permission to operate the vehicle. 
Appellant gave Officer Walker the owner=s
phone number and requested that he call her. 
When Officer Walker talked to Appellant the following day, he continued
to maintain that as far as he knew, he was operating the vehicle with her
permission.

Complainant
Margery Black testified that she is a sixty-five-year old retired school
psychologist who lives in Fountain, Colorado,
just south of Colorado Springs.  In January 2001, Ms. Black began a
short-and-long haul trucking business with a business partner named Michael
Osborne, whom she met through her daughter. 
In their business deal, Ms. Black supplied the capital to purchase the
truck and trailer and the capital to help him make his first trips, while
Mr. Osborne was the working part of the partnership.

Mr. Osborne knew
Appellant and brought him to Colorado
in September 2001.  Mr. Osborne
introduced Appellant to Ms. Black during the first week of September.  Appellant and Ms. Black went to lunch several
times and at some point Appellant offered to prepare her income tax return,
which she had not yet filed.  While they
were working on her income taxes, Appellant told Ms. Black that he was an
excellent salesman--that he could sell watches and rings in Colorado Springs for 100 percent profit.  Appellant told her that he would need money
to purchase the inventory and that he already had forty or fifty customers at a
local hospital who wanted to buy watches from him.  Ms. Black gave Appellant about $2,400, which
he was suppose to send to his contact in El Paso who would then send the
merchandise to him by bus.








Ms. Black drove
Appellant to the bus station many times after he supposedly placed the order,
but the watches never arrived.  Appellant
told Ms. Black that he had placed a tracer on the order.  He later told her that the man in El Paso had misaddressed
the package, so it was returned.  More
time passed and then Appellant starting talking about going down to El Paso to find out what
happened to the inventory he had purchased. 
Appellant told Ms. Black he needed to go to El Paso and her camper, or RV, would be a
good way to get down there.  Appellant
implied, and it was Ms. Black=s
understanding, that it would take Appellant four days to complete the
trip.  Ms. Black thought that she was
loaning her RV to Appellant for four days and he told her he could do the trip
and would do it in that time frame. 
Appellant appeared to understand that he was taking the RV for just four
days.  Ms. Black took the RV to Appellant
and handed him the keys.  Ms. Black also
gave Appellant her credit union credit card to use in case of an
emergency.  Appellant left for El Paso in the RV on
October 24, 2001.

On the first day
of the trip, Ms. Black received a call from Appellant, in which he told her
that he needed new tires because he had a blowout.  Ms. Black gave Appellant permission to use
her credit card for that expense.  On the
second or third day, Appellant called Ms. Black and told her that he had the
watches and wanted to stop at a town on the way back towards Colorado Springs to peddle merchandise at a
flea market.  Appellant implied that he
was coming back immediately.  After the
fourth day, Ms. Black started to worry when Appellant did not return.  On November 8, 2001, Ms. Black reported her
RV as stolen to the police.  Ms. Black
thought she would never see her RV again and figured she was out the money she
had given to Appellant for the watches. 
She concluded she had been scammed, felt horrible, and was very
embarrassed.








On November 12 or
13, Ms. Black and Mr. Osborne drove to El
 Paso to look for the RV.  She thought she saw it, but was unable to
recover it.  Ms. Black returned to Colorado by bus and
arrived at her home in Fountain on November 22. 
Appellant had left a message on her answering machine.  In the message Appellant said he had not been
able to speak for three weeks because he had polyps in his throat.  He said he was in Houston and needed to know how to have the
checks made out for the orders.  He also
said he was heading back towards Del Rio, taking antibiotics for the polyps in
his throat, and would call back to let her know what was going on.

Around November
26, Appellant called Ms. Black again and asked her for money.  He told her he was East and needed money to
get back to El Paso.  Ms. Black refused to give him more
money.  Ms. Black did not tell him that
she had contacted the police or that the RV was overdue because she feared
Appellant would Ago
underground@ and she
would never see her RV again.  On
November 27, a police officer called Ms. Black and informed her that her RV was
in police custody.  Ms. Black was never
paid back the money she gave Appellant nor did she ever receive any watches
from him.

Sufficiency
of the Evidence

In Issues One and
Two, Appellant challenges the legal and factual sufficiency of the evidence to
sustain his conviction.  Specifically,
Appellant asserts that the State failed to prove beyond a reasonable doubt that
he knew he did not have consent to use the complainant=s
RV.

Standards
of Review

In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson
v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Hernandez v. State,
946 S.W.2d 108, 








110-11 (Tex.App.--El Paso 1997, no
pet.).  We do not resolve any conflict of
fact, weigh any evidence, or evaluate the credibility of any witnesses, as this
was the function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); Lucero v. State,
915 S.W.2d 612, 614 (Tex.App.--El Paso 1996, pet. ref=d).  Instead, our duty is to determine whether if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22; Lucero, 915 S.W.2d at 614. 
In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict.  Matson, 819
S.W.2d at 843; Lucero, 915 S.W.2d at 614.








When conducting a
review of the factual sufficiency of the evidence, we view all the evidence in
a neutral light, both for and against the verdict, to determine whether it
demonstrates that the proof of guilt is so obviously weak as to undermine our
confidence in the jury=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 134 (Tex.Crim.App. 1996).  We
review the evidence supporting a fact in dispute and compare it to evidence
tending to disprove that fact.  Johnson,
23 S.W.3d at 6-7; Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54
(1997).  Although we are authorized to
set aside the jury=s
determination, we must give appropriate deference its determination and should
not intrude upon the jury=s
role as the sole judge of the weight and credibility given to evidence
presented at trial.  See Johnson,
23 S.W.3d at 7.  We will set aside a
verdict only where the evidence supporting guilt is so obviously weak or the
contrary evidence so overwhelmingly outweighs the supporting evidence as to
render the conviction clearly wrong and manifestly unjust.  Ortiz v. State, 93 S.W.3d 79, 87
(Tex.Crim.App. 2002), cert. denied, 123 S.Ct. 1901, 155 L.Ed.2d 824
(2003).  A jury=s
verdict is not manifestly unjust merely because the fact finder resolved
conflicting views of the evidence in favor of the State.  Cain v. State, 958 S.W.2d 404, 410
(Tex.Crim.App. 1997).

Unauthorized
Use of a Motor Vehicle

A person commits
the offense of unauthorized use of a motor vehicle if he intentionally or
knowingly operates another=s
motor-propelled vehicle without the effective consent of the owner.  See Tex.Pen.Code
Ann. '
31.07(a)(Vernon 2003).  In an
unauthorized use of a motor vehicle case, the State has the burden to prove
that the defendant operated the vehicle knowing he did not have the effective
consent of the owner.  McQueen v.
State, 781 S.W.2d 600, 604 (Tex.Crim.App. 1989); Gardner v. State, 780 S.W.2d
259, 263 (Tex.Crim.App. 1989).








Appellant argues
that the State failed to prove he knew he did not have Ms. Black=s consent to operate the RV, pointing
to evidence in the record regarding his phone calls to her after she had
reported the RV stolen, Ms. Black=s
failure to inform him that the RV was overdue, and his statement to Officer
Walker that he had the owner=s
permission.  Based on Ms. Black=s testimony, however, there is
sufficient circumstantial evidence to support the jury=s
finding that Appellant knew he did not have Ms. Black=s
effective consent to operate the RV.  See
Walker v. State, 846 S.W.2d 379, 382 (Tex.App.--Houston [14th Dist.] 1992,
pet. ref=d)
(circumstantial evidence showed appellant knew he did not have consent of the
owner).  When the inventory of watches
failed to arrive, Appellant told Ms. Black he needed to go to El Paso and suggested to her that he take her
RV.  It was Ms. Black=s understanding that the trip would
take four days.  Ms. Black thought that
she was loaning Appellant her RV for only four days and he told her he could do
the trip and would do it in that time frame. 
Ms. Black recalled that Appellant appeared to understand that he was
taking the RV for only four days. 
Evidence of Appellant=s
later phone calls, in which he offered various reasons for the delay, do not
negate Ms. Black=s
testimony regarding their arrangement for use of the RV for limited
purposes.  Ms. Black explained that
she did not complain about the RV being overdue because she feared Appellant
would go into hiding and never return it. 
We find the evidence was legally sufficient to prove the elements of the
offense of unauthorized use of a motor vehicle beyond a reasonable doubt.  After reviewing all the evidence in a neutral
light, we conclude the evidence was factually sufficient as the proof of
Appellant=s guilt
is not so obviously weak as to be clearly wrong and manifestly unjust.  See Johnson, 23 S.W.3d at 11.  Issues One and Two are overruled.

Extraneous
Offense Evidence

In Issue Three,
Appellant argues the trial court erred in allowing the State to present
extraneous offense evidence when such evidence was more prejudicial to him than
it was probative.  Specifically,
Appellant complains of the trial court permitting the State to introduce
evidence that Appellant defrauded Ms. Black of money and had used one of her
credit cards without her permission. 
After reviewing the record, we find that Appellant failed to preserve
error of his complaint for review.








On direct
examination, Ms. Black testified that she gave Appellant about $2,400 to order
the watches.  She also testified that
when Appellant did not return by November 8, Ms. Black thought she would never
see her RV again and had been scammed or conned out of her money.  Appellant=s
counsel did not object to this testimony. Ms. Black further testified that she
never saw any watches from Appellant, never saw any money from Appellant, and
never received any legitimate explanation about where her money went.  Appellant=s
counsel did not timely object to this testimony.  During cross-examination, defense counsel
questioned Ms. Black about the credit cards Appellant had on his trip.  The following exchange occurred:

Defense
Counsel:          -- did my client also
have credit cards on his trip south?

 

Ms.
Black:                    He had a credit
card -- a credit union credit card that I expected him to be able to use for
emergencies, if he had to, for the four days he was going to be gone. 

 

Defense
Counsel:          So the answer is yes?

 

Ms.
Black:                    Yes.  He had my credit union credit card.

 

Defense
Counsel:          Okay.  You know, we don=t
-- I -- you know, I=m glad it
was a credit union credit card, you know. 
Every credit card has a 1-800 number on it, doesn=t
it?

 

Ms.
Black:                    Right.  

 

Defense
Counsel:          And every bill has a
1-800 number?

 

Ms.
Black:                    Yes.

 

Defense
Counsel:          So if you=re having a difficult time reaching
someone or you think that they=re
taking advantage of you monetarily, using your credit, all you have to do is
call the credit card company -- wait a minute; let me finish the question --
and cancel the card.  And then when that
person goes to use it at a merchant or a vendor or ATM, they=re going to get nothing, correct?

 

Ms.
Black:                    You are correct,
sir.

 

Defense
Counsel:          All right.  And you knew this?

 








Ms.
Black:                    Of course I knew
this.  And when I got a call from my
credit card company saying a woman using my credit card had tried --

 

Defense
Counsel:          Ms. Black --

 

Ms.
Black:                    -- to check into
a hotel --

 

Defense
Counsel:          Ms. Black --

 

Ms.
Black:                    -- I said that
was not authorized and urged -- had my card canceled.

 

Defense
Counsel:          Yes.  And that has nothing to do with this --

 

Ms.
Black:                    It=s the first intimation I had that he
was misusing my credit card, and I had it canceled.

 

Defense
Counsel:          Okay.  You brought your documentation on that?

 

Ms.
Black:                    I have it.

 

Defense
Counsel:          You have it with you?

 

Ms.
Black:                    Yes, I do.

 

Defense
Counsel:          May I see it?

 

Appellant=s
counsel did not object to Ms. Black=s
responses nor did he request that her testimony be stricken.  








In order to
preserve a complaint concerning the admission of evidence for appellate review,
a party must have presented to the trial court a timely request, objection, or
motion, stating the specific grounds for the ruling he desired of the court
unless the specific grounds were apparent from the context.  Tex.R.App.P.
33.1(a)(1)(A).  An appellant waives any
error regarding improperly admitted evidence if that same evidence is brought
in later by the defendant or by the State without objection.  Rogers
v. State, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993); Ethington v. State,
819 S.W.2d 854, 858 (Tex.Crim.App. 1991). 
Further, with two exceptions that did not occur in this case, a party
must continue to object to the alleged inadmissible evidence each time that
evidence is offered.  See Ethington,
819 S.W.2d at 858.  Here, Appellant
failed to object to Ms. Black=s
testimony regarding the money she gave to Appellant each time this evidence was
offered, therefore he has waived any error in its admission.  Appellant has also waived any error in the
admission of Ms. Black=s
testimony regarding the misuse of her credit card by failing to object to her
testimony.  Because Appellant has failed
to preserve the alleged error, Issue Three is overruled.

For the reasons
stated, we affirm the trial court=s
judgment.

 

 

August
19, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)